No. 23-3237
_____

## UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT
_____

BIO GEN, LLC, et al.
*Plaintiffs-Appellees,*

v.

SARAH HUCKABEE SANDERS, et al.
*Defendants-Appellants.*
_____

On Appeal from the United States District Court
for the Eastern District of Arkansas
Case No. 4:23-cv-00718-BRW
_____

## PLAINTIFFS-APPELLEES' BRIEF
_____

Abtin Mehdizadegan (2013136)
Allison T. Scott (2020205)
Joseph C. Stepina (2020124)
HALL BOOTH SMITH, P.C.
200 River Market Ave., Ste. 500
Little Rock, Arkansas 72201
Telephone: (501) 214-3499

*and*

Justin Swanson (*pro hac vice*)
Paul Vink (*pro hac vice*)
BOSE MCKINNEY & EVANS, LLP
111 Monument Circle, Suite 2700
Indianapolis, IN 46204
Telephone: (317) 684-5404

## RESPONSIVE STATEMENT TO APPELLANTS' SUMMARY OF THE CASE AND STATEMENT REGARDING ORAL ARGUMENT

Appellants grossly misconstrue the 2018 Farm Bill and Arkansas's Act 629 in their Summary of the Case.

Act 629 impermissibly narrows the broad definition of hemp set by Congress in the 2018 Farm Bill by recriminalizing certain hemp products. As the district court correctly held, Act 629 is preempted by the 2018 Farm Bill, which declares all derivatives and isomers of hemp to be legal and mandates that states are not permitted to alter the definition of hemp.

Additionally, the 2018 Farm Bill also preempts Act 629 because the bill expressly declares that states cannot inhibit the interstate commerce of hemp, which Act 629 has done by criminalizing its possession in Arkansas without an effective exemption for interstate commerce.

Finally, Act 629 is void for vagueness in violation of the Due Process Clause, because numerous sections use undefined terms but garner criminal consequences, failing to provide clarity and fair warning to persons of ordinary intelligence as to their requirements.

For the foregoing reasons, Act 629 is unconstitutional, and the district court's preliminary injunction should be upheld.

Appellees respectfully request 20 minutes for oral argument.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and Local Rule 26.1, Appellees respectfully state as follows:

No publicly held corporation or parent company owns 10% or more of Appellees Bio Gen, LLC, Drippers Vape Shop, LLC, and Sky Marketing Corporation. The Cigarette Store, LLC, is owned by TCS Borrower, LLC, which is owned by Bolder Panther Group, LLC. Main Street Equity Interests, Inc. owns more than 10% of Bolder Panther Group, LLC. Main Street Equity Interests, Inc. is a publicly traded company.

# TABLE OF CONTENTS

**RESPONSIVE STATEMENT TO APPELLANTS' SUMMARY OF THE CASE AND STATEMENT REGARDING ORAL ARGUMENT** .................................................................................................. 2

**CORPORATE DISCLOSURE STATEMENT** ......................................... 3

**TABLE OF AUTHORITIES** ..................................................................... 6

**STATEMENT OF THE ISSUES** .............................................................. 11

**STATEMENT OF THE CASE** ................................................................. 14

    **I.**    **Relevant Statutory History**...................................................... 14

    **II.**   **Procedural Background and Disposition Below**............... 18

**STANDARD OF REVIEW** ....................................................................... 21

**SUMMARY OF THE ARGUMENT** ....................................................... 22

**ARGUMENT** ............................................................................................ 25

    **I.**    **Plaintiffs Established That They Are Likely to Prevail on Their Claims That Act 629 is Unconstitutional.**................ 25

        A.    The district court applied the proper legal standard. .......... 25

        B.    Conflict preemption compels Act 629 to be enjoined because it impermissibly narrows the definition of hemp as defined in the 2018 Farm Bill thereby violating congressional intent.. 26

        C.    The 2018 Farm Bill expressly preempts the State's attempt to criminalize the transportation of certain hemp products.... 42

        D.    Act 629 is unconstitutionally vague under the Due Process clause of the Fifth and Fourteenth Amendments. ...............50

II.   **The Remaining Factors Required for a Preliminary Injunction Weigh in Plaintiffs' favor.** ....................................58

    A.   The district court correctly found that Plaintiffs are likely to suffer irreparable harm in the absence of preliminary injunctive relief. ....................................................59

    B.   The balance of equities weighs in Plaintiffs' favor, and a preliminary injunction serves the public interest. ...............62

III.  **The Governor and Attorney General Are Not Entitled to Sovereign Immunity.** .............................................66

**CONCLUSION** .........................................................................70

**CERTIFICATE OF COMPLIANCE** ........................................72

**CERTIFICATE OF SERVICE** ................................................73

# TABLE OF AUTHORITIES

## CASES

**Supreme Court**

*Abbott v. Perez*, 585 U.S. ____, 138 S. Ct. 2305 (2018) ................... 10, 63, 64

*Arizona v. U.S.*, 567 U.S. 387 (2012) ........................................... 8, 25, 37, 42

*Baggett v. Bullitt*, 377 U.S. 360 (1964) ..................................................... 49

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984) ........................................................................................................ 33

*Colautti v. Franklin*, 439 U.S. 379 (1979) .................................................. 29

*Conn. Nat'l Bank v. Germain*, 503 U.S. 249 (1992) ................................... 26

*Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000) ................... 25

*Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022) ................... 29

*Elrod v. Burns*, 427 U.S. 347 (1976) ....................................................... 9, 58

*Ex parte Young*, 209 U.S. 123 (1908) ................................................. passim

*Geier v. Am. Honda Motor Co.*, 529 U.S. 861 (2000) ........................... 24, 27

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) ................................. 9, 48

*Hillsborough Cnty., Fla. v. Automated Med. Lab'ys, Inc.*, 471 U.S. 707 (1985) ................................................................................................... 25

*Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261 (1997) .................................... 64

*Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996) ............................................ 25

*Meese v. Keen*, 481 U.S. 465 (1987) ....................................................... 8, 29

*Nken v. Holder*, 556 U.S. 418 (2009) ...................................................61, 65

*Sprietsma v. Mercury Marine, a Div. of Brunswick Corp.*, 537 U.S. 51 (2002) .................................................................................................. 9, 40

*Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247 (2011).......64

*Winter v. Natural Res. Defense Council*, 555 U.S. 7 (2008)................. 18, 56

*Wooley v. Maynard*, 430 U.S. 705 (1977)...................................................60

**U.S. Courts of Appeal**

*Aaron v. Target Corp.*, 357 F. 3d 768 (8th Cir. 2004)......................... 18, 56

*AK Futures LLC v. Boyd St. Distro, LLC*, 35 F.4th 682 (9th Cir. 2022)
...............................................................................................8, 26, 31, 34

*Annex Books, Inc. v. City of Indianapolis, Ind.*, 624 F.3d 368 (7th Cir.
2010) .......................................................................................................62

*Ark. Times LP v. Waldrip*, 37 F.4th 1386 (8th Cir. 2022) ......................... 45

*Baker Elec. Co-op. v. Chaske*, 28 F.3d 1466 (8th Cir. 1994)................. 10, 60

*C.Y. Wholesale, Inc. v. Holcomb*, 965 F.3d 541 (7th Cir. 2020) ........... 36, 43

*Century Indemnity Co. v. Carlson*, 133 F.3d 591 (8th Cir. 1998)...............44

*Chlorine Inst., Inc. v. Soo Line R.R.*, 792 F.3d 903 (8th Cir. 2015)...... 10, 58

*Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109 (8th Cir. 1981)
............................................................................................. 10, 18, 60

*Dig. Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952 (8th Cir.
2015)........................................................................................... 10, 64, 66

*Gibson v. Arkansas Dept. of Correction*, 265 F.3d 718 (8th Cir. 2001)
........................................................................................... 10, 64, 67

*Glenwood Bridge, Inc. v. City of Minneapolis*, 940 F.2d 367 (8th Cir. 1991)
...................................................................................................60

*Kern v. TXO Prod. Corp.*, 738 F.2d 968 (8th Cir. 1984).............................56

*McKinney v. Southern Bakeries, LLC*, 786 F.3d 1119 (8th Cir. 2015) ........ 18

*Nova Health Sys. v. Gandy*, 416 F.3d 1149 (10th Cir. 2005) ..................... 67

*Novus Franchising, Inc. v. Dawson*, 725 F.3d 885 (8th Cir. 2013) ............ 56

*Owner-Operator Indep. Drivers Ass'n, Inc. v. Supervalu, Inc.*, 651 F.3d 857 (8th Cir. 2011) ........................................ 25

*PCTV Gold, Inc. v. SpeedNet, LLC*, 508 F.3d 1137 (8th Cir. 2007)............. 18

*Phelps-Roper v. City of Manchester, Mo.*, 697 F.3d 678 (8th Cir. 2012) ... 62

*Planned Parenthood Minnesota v. Rounds*, 530 F.3d 724 (8th Cir. 2008) ............................................................................. 8, 22, 23, 57

*Planned Parenthood of Arkansas & E. Oklahoma v. Jegley*, 864 F.3d 953 (8th Cir. 2017) ...................................................... 8, 22

*Richenberg v. Perry*, 73 F.3d 172 (8th Cir. 1995) ................................... 8, 22

*Sanzone v. Mercy Health*, 954 F.3d 1031 (8th Cir. 2020) .......................... 44

*United States v. I.L.*, 614 F.3d 817 (8th Cir. 2010)..................................... 25

*United States v. Tucor Int'l, Inc.*, 189 F.3d 834 (9th Cir. 1999).................. 44

*United States v. Washam*, 312 F.3d 926 (8th Cir. 2002)......................... 9, 48

**U.S. District Courts**

*Annex Books, Inc. v. City of Indianapolis*, 673 F. Supp. 2d 750 (S.D. Ind. 2009)............................................................................................... 62

*Duke's Investments LLC v. Char*, 2022 WL 17128976 (D. Haw. Nov. 22, 2022) ............................................................................................ 37

*MKB Mgmt. Corp. v. Burdick*, 954 F. Supp. 2d 900 (D.N.D. 2013) ....... 9, 57

*Seaman v. Virgina*, 593 F. Supp. 3d 293 (W.D. Va. 2022)......................... 62

*United States v. Mallory*, 372 F. Supp. 3d 377 (S.D.W. Va. 2019)............. 26

**State Cases**

*Aka v. Jefferson Hosp. Ass'n*, 344 Ark. 627, 42 S.W.3d 508 (2001)...........30

*Bush v. State*, 338 Ark. 772, 2 S.W.3d 761 (1999) ....................................9, 50

*Mamo Transp., Inc. v. Williams*, 375 Ark. 97, 289 S.W.3d 79 (2008) . 10, 49

*Simpson v. Cavalry SPV I, LLC*, 2014 Ark. 363, 440 S.W.3d 335 (2014)...33

*Yamaha Motor Corp., U.S.A. v. Richard's Honda Yamaha*, 344 Ark. 44, 38 S.W.3d 356 (2001) ...........................................................................45

**Statutes**

7 U.S.C. § 1639*o*.......................................................................passim

7 U.S.C. § 1639*p*..........................................................8, 9, 28, 36

7 U.S.C. § 1639*q*...................................................................... 36

Act 629 of 2023 ...........................................................................passim

Ark. Code Ann. § 20-56-403 ........................................................ 55

Ark. Code Ann. § 20-56-405............................................. 10, 66, 67

Ark. Code Ann. § 20-56-412 ..............................................31, 42, 43

Ark. Code Ann. § 20-56-413 ................................................. 10, 67

Ark. Code Ann. § 2-15-402 (2017)....................................................11

Ark. Code Ann. § 2-15-502 ........................................................32

Ark. Code Ann. § 2-15-503 ............................................. 8, 13, 28

Ark. Code Ann. § 2-15-506 ........................................................32

Ark. Code Ann. § 5-64-214 ........................................................ 31

Ark. Code Ann. § 5-64-215 ...............................................passim

Pub. L. 115-334 ............................................................. 41

Pub. L. No. 113-79 ......................................................... 11

<u>**REGULATIONS**</u>

Dep't of Agric. Final Rule, *Establishment of a Domestic Hemp Production Program*, 86 Fed. Reg. 5596 (Jan. 19, 2021) .................................... 37, 42

<u>**OTHER AUTHORITIES**</u>

H.R. REP. NO. 115-1072 .................................................... 12, 19, 27

## STATEMENT OF THE ISSUES

**I. Whether the district court properly applied the "likely to succeed on the merits" standard?**

- *Richenberg v. Perry*, 73 F.3d 172 (8th Cir. 1995)

- *Planned Parenthood Minnesota v. Rounds*, 530 F.3d 724 (8th Cir. 2008)

- *Planned Parenthood of Arkansas & E. Oklahoma v. Jegley*, 864 F.3d 953 (8th Cir. 2017)

**II. Whether the district court properly concluded that Appellees established a likelihood of success on the merits of their claim of conflict preemption against Appellants?**

- *Arizona v. U.S.*, 567 U.S. 387 (2012)

- *AK Futures LLC v. Boyd St. Distro, LLC*, 35 F.4th 682 (9th Cir. 2022)

- *Meese v. Keen*, 481 U.S. 465 (1987)

- 7 U.S.C. §§ 1639*o*, 1639*p*

- Act 629 of 2023 §§ 2, 6 (Ark. Code Ann. §§ 2-15-503, 5-64-215)

**III. Whether the district court properly held that Appellees established a likelihood of success on the merits of their express preemption claim against Appellants?**

- *Sprietsma v. Mercury Marine, a Div. of Brunswick Corp.*, 537 U.S. 51 (2002)

- *Chatelain v. Kelley*, 322 Ark. 517, 910 S.W.2d 215 (1995)

- Pub. L. 115-334, Title X, § 10114; 7 U.S.C. §§ 1639*o, -p*

- Act 629 of 2023 § 7; Ark. Code Ann. § 5-64-215

- Act 629 of 2023 § 10; Ark. Code Ann. § 20-56-412

**IV.  Whether the district court properly held that Appellees established a likelihood of success on the merits of their claim for void for vagueness against Appellants?**

- *Grayned v. City of Rockford*, 408 U.S. 104 (1972)

- *United States v. Washam*, 312 F.3d 926 (8th Cir. 2002)

- *Mamo Transp., Inc. v. Williams*, 375 Ark. 97, 289 S.W.3d 79 (2008)

- Pub. L. 115-334, Title X, § 10114; 7 U.S.C. § 1639*o*

**V.  Whether the district court properly exercised its discretion when it concluded that Appellees had shown that they would suffer irreparable harm absent a preliminary injunction?**

- *Elrod v. Burns*, 427 U.S. 347 (1976)

- *MKB Mgmt. Corp. v. Burdick*, 954 F. Supp. 2d 900 (D.N.D. 2013)

- *Chlorine Inst., Inc. v. Soo Line R.R.*, 792 F.3d 903 (8th Cir. 2015)

VI.	**Whether the district court properly exercised its discretion when it found that the balance of harms weighed in favor of granting Appellees a preliminary injunction?**

- *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109 (8th Cir. 1981)

- *Baker Elec. Co-op. v. Chaske*, 28 F.3d 1466 (8th Cir. 1994)

- *Abbott v. Perez*, 585 U.S. ___, 138 S. Ct. 2305 (2018)

VII.	**Whether the district court properly held that Defendant Governor Sanders and Defendant Attorney General Griffin are not entitled to Eleventh Amendment immunity?**

- *Ex parte Young*, 209 U.S. 123 (1908)

- *Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952 (8th Cir. 2015)

- *Gibson v. Arkansas Dept. of Correction*, 265 F.3d 718 (8th Cir. 2001)

- Act 629 of 2023 § 17

- Ark. Code Ann. §§ 20-56-405, -413

## STATEMENT OF THE CASE

## I.     Relevant Statutory History

On February 7, 2014, President Obama signed the Agricultural Act of 2014 (the "2014 Farm Bill"), which permitted states to grow industrial hemp under certain conditions. Pub. L. No. 113–79. In response to the 2014 Farm Bill, Arkansas passed Act 981 in 2017 with the intent to move Arkansas "to the forefront of industrial hemp production, development, and commercialization of hemp products . . ." Ark. Code Ann. § 2-15-402 (2017) (repealed by Act 565). Specifically, Act 981 permitted Arkansas to adopt rules to administer an industrial hemp research program and to license persons to grow industrial hemp for research. *Id.*

On December 20, 2018, President Trump signed the 2018 Farm Bill, which permanently removed hemp from the Controlled Substances Act and amended the Agricultural Marketing Act of 1946 "to allow States to regulate hemp production based on a state or tribal plan." *See generally* App. 266–85, R. Doc. 51-1. While the 2018 Farm Bill does not preempt or limit any state laws that regulate the agricultural *production* of hemp, the 2018 Farm Bill expressly provided that "no State or Indian Tribe shall prohibit the transportation or shipment of hemp or hemp products produced in

accordance with [the 2018 Farm Bill]." *See* 7 U.S.C. § 1639o; Pub. L. 115–334, Title X, § 10114; App. 284, R. Doc. 51-1, at 19.

The 2018 Farm Bill also broadened the definition of hemp to include "the plant Cannabis sativa L. and any part of that plant, including the seeds thereof *and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not*, with a delta-9 tetrahydrocannabinol [THC] concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 1639o(1); App. 278, R. Doc. 51-1, at 13 (emphasis added). The Conference Report for the 2018 Farm Bill establishes Congressional intent to preclude States from altering the definition of hemp: "state and tribal governments are authorized to put more restrictive parameters on the production of hemp, *but are not authorized to alter the definition of hemp* or put in place policies that are less restrictive." H.R. REP. NO. 115-1072 (Conf. Rep.); App. 301, R. Doc. 51-2, at 16 (emphasis added).

In 2019, in response to the 2018 Farm Bill, Arkansas passed Act 504 which decoupled hemp from "marijuana" under the State's Uniform Controlled Substances Act. Then, in 2021, Arkansas amended its hemp program to permit hemp licensing without a research plan, thus officially opening up a full commercial market.

On April 11, 2023, Defendant Governor Sanders signed Act 629, which went into effect on August 1, 2023. *See* Act 629 of 2023. The Act attempts to recriminalize certain hemp-derived cannabinoid products and obstruct the shipment and transportation of hemp, in direct conflict with the 2018 Farm Bill. In addition to being confusing and nearly unintelligible, Act 629's new definition of "industrial hemp" impermissibly narrows the broad definition of "hemp" from the 2018 Farm Bill. *Id.* at § 7; Ark. Code Ann. § 2-15-503(5). As opposed to any product that is sourced from the hemp plant and that contains no more than 0.3% delta-9 THC on a dry weight basis, Act 629 would instead require hemp products to instead have a delta-9 THC concentration "of no more than three-tenths of one percent (0.3%) of the hemp-derived cannabidiol" to meet the Act's new definition of "industrial hemp." *Id.* The Act's definition limits hemp to something with a delta-9 THC concentration that is a percentage concentration of a wholly different cannabinoid, cannabidiol ("CBD")—where the 2018 Farm Bill does not.

Moreover, Act 629 recriminalizes all hemp products "produced as a result of a synthetic chemical process"; despite no such "synthetic" distinction permitted under federal law. Act 629 of 2023 § 6; Ark. Code Ann. § 5-64-215(a)(5)(i). The Act goes a step further to recriminalize "[a]ny other psychoactive substance derived [from hemp]," which would encompass

CBD, which is understood to be "psychoactive" by industry experts (as are caffeine and sugar). Act 629 of 2023 § 6; Ark. Code Ann. § 5-64-215(a)(5)(j); *see* Tr. 45:11-19.

Furthermore, Act 629 interferes with the interstate transportation and shipment of hemp and hemp products in direct violation of the express language of the 2018 Farm Bill that "no State or Indian Tribe shall prohibit the transportation or shipment of hemp or hemp products. . . ." 7 U.S.C. § 16390. Section 7 of the Act, which only goes into effect once Sections 1–5 of the Act are enjoined, states:

> This section does not prohibit the *continuous* transportation through Arkansas of the plant Cannabis sativa L., and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than three-tenths of one percent (0.3%) on a dry weight basis, produced in accordance with 7 U.S.C. § 16390 *et seq.*

Act 629 of 2023 § 7; Ark. Code Ann. § 5-64-215(d) (emphasis added). While the definition of hemp in Section 7 of the Act matches the 2018 Farm Bill's definition, an additional burden has been added to interstate transportation of hemp and hemp products by requiring the "*continuous* transportation" through Arkansas of hemp and hemp products. The Act's attempt to criminalize hemp as a controlled substance when it is not in "continuous

transportation," which is not defined in the Act, defies congressional intent as a prohibition against hemp and hemp products in transportation or shipment.

## II.  Procedural Background and Disposition Below

On July 31, 2023, one day before Act 629's effective date, Plaintiffs filed their Complaint for Declaratory and Injunction Relief and their Motion for Temporary Restraining Order or Alternative Motion for Preliminary Injunction against Defendants, including the State of Arkansas, Sarah Huckabee Sanders in her official capacity as Governor of Arkansas, Tim Griffin in his official capacity as Attorney General of Arkansas, the 28 prosecuting attorneys for the State of Arkansas in their official capacities, and various state agencies including, the Arkansas Department of Finance and Administration, the Arkansas Tobacco Control Board, the Arkansas Department of Agriculture, and the Arkansas State Plant Board, to challenge the constitutionality Act 629. App. 6–7, R. Doc. 2.

Plaintiffs argued that Act 629 violates the Supremacy Clause of the United States Constitution because it is preempted by the 2018 Farm Bill and violates the Due Process Clause because it is unconstitutionally vague. App. 7–9, R. Doc. 2, at 2–4. Plaintiffs also argued that the Act violated the Commerce Clause because it restricts the transportation of an interstate good

18

and violates the Fifth Amendment as it constitutes a regulatory taking. App. 7–9, R. Doc. 2, at 2–4.

On August 8, 2023, Defendants filed a response to Plaintiffs' motion and also moved to dismiss, arguing that the lawsuit should be dismissed as to the State of Arkansas, Governor Sanders, Attorney General Griffin, and each of the named state agencies on sovereign immunity and standing grounds. On August 15, 2023, Plaintiffs filed their Amended Complaint for Declaratory and Injunctive Relief as a matter of course, removing the State of Arkansas and naming the director of each of the state agencies in their official capacities. App. 239–44, R. Doc. 51. On August 21, 2023, Governor Sanders and Attorney General Griffin filed a reply in support of their motion to dismiss or alternative renewed motion to dismiss. On August 21, 2023, the 28 named prosecutors filed an answer to the Amended Complaint. App. 326–33, R. Doc. 56.

On September 7, 2023, after reviewing the briefing, hearing arguments, and reviewing the evidence and testimony presented during the hearing on August 23, 2023, the district court issued an Order granting Plaintiffs' Motion for Preliminary Injunction and denying Defendants' Motion to Dismiss. App. 342–59, R. Doc. 65-1. The district court concluded that Plaintiffs were likely to succeed on the merits of their express and

conflict preemption claims and their void for vagueness claim, and that they established irreparable harm, had an inadequate remedy at law, the harms weighed in Plaintiffs' favor, and the injunction served the public interest. App. 350–58, R. Doc. 65-1, at 9–17. Because the district court found that Plaintiffs proved a likelihood of success on their preemption and void for vagueness claims, it did not address the Commerce Clause and regulatory takings claims. App. 357, R. Doc. 65-1, at 16 n.68.

Finally, the district court held that separate defendants Governor Sanders and Attorney General Griffin were proper defendants in this action given their specific enforcement responsibilities under the Act. App. 349–50, R. Doc. 65-1, at 18–19.

## STANDARD OF REVIEW

Parties seeking a preliminary injunction must establish that (1) they are likely to succeed on the merits of their claim; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities favors the plaintiffs; and (4) an injunction would serve the public interest. *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008). The grant of preliminary relief under Rule 65 is largely within the discretion of the district court. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109 (8th Cir. 1981); *Aaron v. Target Corp.*, 357 F. 3d 768 (8th Cir. 2004). The purpose of a preliminary injunction is "merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). "A district court has broad discretion when ruling on a request for preliminary injunction, and it will be reversed only for clearly erroneous factual determinations, an error of law, or an abuse of its discretion." *Aaron*, 357 F.3d at 773–74; *PCTV Gold, Inc. v. SpeedNet, LLC*, 508 F.3d 1137, 1142 (8th Cir. 2007); *McKinney v. Southern Bakeries, LLC*, 786 F.3d 1119, 1122 (8th Cir. 2015). Determinations of sovereign immunity are reviewed *de novo*. *See Balogh v. Lombardi*, 816 F.3d 536, 544 (8th Cir. 2016).

<u>**SUMMARY OF THE ARGUMENT**</u>

As for the first element required to obtain a preliminary injunction, Plaintiffs are likely to succeed on the merits of their claims that Act 629 is unconstitutional.

First, conflict preemption renders Act 629 unconstitutional because the Act impermissibly alters and narrows the definition of hemp, and thereby places it in direct conflict with both the statutory language and congressional intent of the 2018 Farm Bill. The 2018 Farm Bill purposefully broadened the definition of hemp to include all hemp derivatives and extracts and removed it from the Controlled Substances Act. 7 U.S.C. § 1639o(1); *see* App. 266–85, R. Doc. 51-1. Congress specifically stated in the Conference Report for the 2018 Farm Bill that states "are not authorized to alter the definition of hemp . . . ." H.R. REP. NO. 115-1072 (Conf. Rep.); App. 301, R. Doc. 51-2, at 16. Yet despite this clear legislative intent, Act 629 altered the definition of hemp by criminalizing and reclassifying certain hemp-derived cannabinoids, including delta-8 and CBD, as illegal controlled substances. This stands in direct conflict with Congress's intent with the 2018 Farm Bill and is therefore conflict preempted.

Second, the 2018 Farm Bill expressly preempts Arkansas's attempt to criminalize the transport of certain hemp products when not in "*continuous*

transportation through Arkansas." Section 10114(b) of the 2018 Farm Bill unequivocally states, "No State or Indiana Tribe shall prohibit the transportation or shipment of hemp or hemp products . . . ." Despite this express prohibition, Act 629 only authorizes the "continuous transportation" of hemp or hemp products through the state but fails to define or explain what constitutes *continuous* transportation. Therefore, Act 629 lacks an effective exemption for interstate commerce in express violation of the 2018 Farm Bill.

Third, Act 629 fails to give a person of ordinary intelligence fair notice as to what conduct is forbidden and what is permitted regarding the production, possession, transportation, and shipment of the hemp products it seeks to ban. Specifically, based on the narrowed definition of "industrial hemp" in Section 2 of Act 629, the Act limits hemp to something with a delta-9 THC concentration that is a percentage concentration of a wholly different cannabinoid, CBD, and the terms "continuous transportation," "synthetic substance," and "psychoactive substances" are vague and not defined in Act 629. These vague terms and contradictory principles leave Plaintiffs and the end-users in the stream of commerce to guess as to the meaning of the Act 629, and if they guess wrong, they face criminal sanctions.

As for the balancing factors required for a preliminary injunction, these too weigh in Plaintiffs' favor. Plaintiffs established that they would suffer irreparable harm in the absence of preliminary injunction in the form of significant but uncertain financial loss and criminal sanctions. Given that the State has no interest in passing an unconstitutional statute, the balance of equities favors Plaintiffs, and an injunction serves the public interest. Therefore, the district court's order granting Plaintiffs-Appellees' Motion for Preliminary Injunction should be affirmed.

Finally, the Governor and Attorney General have some connection with the enforcement of Act 629 such that they fall within the *Ex parte Young* exception to sovereign immunity. Therefore, the district court's order denying Defendants-Appellants' Motion to Dismiss should be affirmed.

## ARGUMENT

## I.   PLAINTIFFS ESTABLISHED THAT THEY ARE LIKELY TO PREVAIL ON THEIR CLAIMS THAT ACT 629 IS UNCONSTITUTIONAL.

### A.   The district court applied the proper legal standard.

Appellants are correct that the district court held that Plaintiffs were likely to succeed on the merits of their preemption claims and void for vagueness claim. *See* Defendants-Appellants' Brief, p. 18. However, Appellants are incorrect in their proposition that this was not the proper legal standard. *See id.*

In *Richenberg v. Perry*, this Court held that "a substantial likelihood of success on the merits . . . must be the standard when considering whether to grant a preliminary injunction preventing the implementation of a statute[.]" 73 F.3d 172, 172–73 (8th Cir. 1995). In *Planned Parenthood Minnesota v. Rounds*, this Court reaffirmed its holding in *Richenberg* and clarified "that a party seeking a preliminary injunction of the implementation of a state statute must demonstrate more than just a 'fair chance' that it will succeed on the merits." 530 F.3d 724, 731–32 (8th Cir. 2008). This Court again held in *Planned Parenthood of Arkansas & E. Oklahoma v. Jegley* that when a party seeks a preliminary injunction to enjoin the implementation of a state statute, it must show that it is "likely to prevail on the merits." 864

F.3d 953, 957–58 (8th Cir. 2017) (citations omitted). While the Eighth Circuit has moved to the Supreme Court's phrasing, "likely to prevail on the merits," this language is equivalent to "likely to succeed on the merits." *See Rounds*, 530 F.3d at 732 n.4.

Here, the district court did not improperly apply the "fair chance" standard when evaluating the probability that the Plaintiffs will succeed on the merits of their claims. The district court stated that the factor to be considered was "whether there is a substantial probability movant will succeed at trial." App. 349, R. Doc. 65-1, at 8. In its specific holdings on the merits of each claim, the district court determined that "Plaintiffs have shown they are likely to succeed" on their preemption claims and void for vagueness claim. App. 355, 357, R. Doc. 65-1, at 14, 16.

The district court applied the correct standard when it ruled that Plaintiffs were likely to succeed on the merits of their claims.

**B.** **Conflict preemption compels Act 629 to be enjoined because it impermissibly narrows the definition of hemp as defined in the 2018 Farm Bill thereby violating congressional intent.**

Act 629 is preempted by the 2018 Farm Bill, which declares all derivatives, extracts, cannabinoids, and isomers of hemp to be legal and mandates that states are not permitted to alter the definition of hemp in an attempt to criminalize hemp.

Defendants argue that Act 629's definition of hemp is consistent with the 2018 Farm Bill. *See* Defendants-Appellants' Brief, pp. 19–26. The district court disagreed with Defendants and recognized that Act 629's definition of hemp differs in fundamental ways from the 2018 Farm Bill's definition. App. 353, R. Doc. 65-1, at 12.

Act 629's narrowed definition of hemp conflicts with Congress's intent to broaden the definition of hemp to protect "all derivatives, extracts, cannabinoids, isomers" of the hemp plant to establish a national framework for hemp as an agricultural commodity. The district court properly held that Plaintiffs had shown that they were likely to succeed on their conflict preemption claim. App. 355, R. Doc. 65-1, at 14.

A conflict preemption claim asks whether "the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona v. U.S.*, 567 U.S. 387, 387 (2012) (quotation and citation omitted); *see Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 874 (2000). "Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law." *Hillsborough Cnty., Fla. v. Automated Med. Lab'ys, Inc.*, 471 U.S. 707, 713 (1985). In determining whether a conflict exists, courts consider "the federal statute as a whole and

identify its purpose and intended effects[.]" *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000).

Congressional intent may be construed from the language of the statute, statutory framework, and legislative history. *See Medtronic, Inc. v. Lohr*, 518 U.S. 470, 486 (1996) (statutory preemption case holding that congressional purpose may be found from the "language of the pre-emption statute," its surrounding "statutory framework," and "the structure and purpose of the statute as a whole" evident from its "basic purpose" and "legislative history"). The best indication of congressional intent is the language of the statute. *Owner-Operator Indep. Drivers Ass'n, Inc. v. Supervalu, Inc.*, 651 F.3d 857, 862 (8th Cir. 2011) (citing *United States v. I.L.*, 614 F.3d 817, 820 (8th Cir. 2010)).

Here, the Court need not look any further than the text of the 2018 Farm Bill for evidence of congressional intent to include hemp products like delta-8 and delta-9 THC that are under the 0.3% dry weight basis within hemp's broad definition. Congress explicitly included "all derivatives [and] extracts" of hemp in the definition of hemp, 7 U.S.C. § 1639o(1), and the Court is to presume this language was purposeful. *I.L.*, 614 F.3d at 820 ("courts must presume that a legislature says in a statute what it means and means in a statute what it says there."). And to remove any doubt as to its

intent, the 2018 Farm Bill permanently removed hemp as defined under 7 U.S.C. § 16390(1) from the definition of marijuana in the Controlled Substances Act.

With its definition of "hemp" in the 2018 Farm Bill, Congress deliberately broadened the 2014 Farm Bill's definition of "industrial hemp" to additionally include "all derivatives, extracts, cannabinoids, isomers"— individual parts of the hemp plant which were not explicitly included in the 2014 Farm Bill's definition. *See United States v. Mallory*, 372 F. Supp. 3d 377, 379 n.1 (S.D.W. Va. 2019). The 2018 Farm Bill did not, however, change the delta-9 THC dry weight standard by which hemp is federally measured. So long as a product contains 0.3% delta-9 THC or less on a dry weight basis, the product constitutes hemp under the 2018 Farm Bill. *See AK Futures LLC v. Boyd St. Distro, LLC*, 35 F.4th 682, 690 (9th Cir. 2022) ("A straightforward reading of [the 2018 Farm Bill] yields a definition of hemp applicable to all products that are sourced from the cannabis plant, contain no more than 0.3 percent delta-9 THC, and can be called a derivative, extract, cannabinoid, or one of the other enumerated terms.").

In addition to the plain language of the 2018 Farm Bill, the legislative history behind the bill provides further support of Congress's objective. The Conference Report for the 2018 Farm Bill establishes that Congress intended

to preclude states from adopting a more restrictive definition of hemp in an attempt to criminalize it: "state and Tribal governments are authorized to put more restrictive parameters on the production of hemp, *but are not authorized to alter the definition of hemp*" H.R. REP. NO. 115-1072 (Conf. Rep.); App. 301, R. Doc. 51-2, at 16 (emphasis added); *Geier*, 529 U.S. at 874 (looking to comments of the federal act in question and its legislative history to determine the purpose and intent of the act).

The government even assigned the USDA to be the sole federal regulator of hemp production, leaving no role for DEA. *See* App. 266–85, R. Doc. 51-1. This intent is reflected in Chairman of the House Agriculture Committee Congressman David Scott's letter to the Department of Justice and the DEA. App. 322, R. Doc. 51-4, at 1 (explaining "the 2018 Farm Bill's definition of hemp was broadened from the 2014 Farm Bill's version to include derivatives, extracts and cannabinoids" so "that derivatives, extracts and cannabinoids would be legal").

The 2018 Farm Bill broadly defines hemp as including *all* products derived from hemp, so long as the Delta-9 THC concentration is not more than 0.3%. Because it was Congress's intent to prohibit states from altering the definition of hemp, and because Act 629 narrows the 2018 Farm Bill's

definition of hemp and criminalizes certain federally protected hemp products, it is preempted by federal law.

Here, Act 629 narrows the definition of "industrial hemp." Ark. Code Ann. § 2-15-503(5). The Industrial Hemp Production Act establishes a 2018 Farm Bill-authorized plan by which hemp may be legally grown and cultivated in Arkansas. The Industrial Hemp Production Act is, therefore, subject to the 2018 Farm Bill's parameters. *See* 7 U.S.C. § 1639p (requiring a state to submit its 2018 Farm Bill hemp plan to USDA for approval).

But Arkansas's modified definition of "industrial hemp" in Section 2 of the Act narrows the term to exclude products that the 2018 Farm Bill's definition of "hemp" was expressly intended to protect. As opposed to any product that is sourced from the hemp plant and that contains no more than 0.3% delta-9 THC on a dry weight basis, a product must instead have a delta-9 THC concentration "of no more than three-tenths of one percent (0.3%) of the hemp-derived *cannabidiol*" to meet the Act's new definition of "industrial hemp." From a chemistry context, "to try to relate the concentration of delta-9 THC to the amount of CBD that the plant produces makes no sense at all." Tr. 39:12-14.

Defendants somehow assert that the Act's narrowed definition of "industrial hemp" is "consistent" with the 2018 Farm Bill's expanded

definition of "hemp." Defendants-Appellants' Brief, pp. 19–26. Appellants supplied no evidence for that belief to the lower court, and this Court can easily compare the plain language of the 2018 Farm Bill to Act 629. While Defendants now at least recognize that Act 629's definition differs from the 2018 Farm Bill due the insertion "of the hemp-derived cannabidiol" into that definition, Defendants contend that this insertion is simply a "clarification" of what federal law impliedly intended. *Id.* at pp. 20–21.

The Arkansas legislature is not vested with authority to clarify what it believes Congress intended when it preemptively defined hemp. When a statute includes an explicit definition, that definition must be followed, and courts and state legislatures are forbidden from implying any alternative meaning. *See Meese v. Keen*, 481 U.S. 465, 484–85 (1987) ("It is axiomatic that the statutory definition of the term excludes unstated meanings of that term."); *Colautti v. Franklin*, 439 U.S. 379, 392–93 n.10 (1979) ("As a rule, a definition which declares what a term means . . . excludes any meaning that is not stated.") (internal quotations and citations omitted) *abrogated on other grounds by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022).

The Arkansas legislature could have simply reproduced the 2018 Farm Bill's definition of hemp in Act 629's first definition of hemp. But Act 629

intentionally included the additional language that hemp could be ". . . no more than three-tenths of one percent (0.3%) *of the hemp-derived cannabidiol* on a dry weight basis . . . ." Arkansas courts presume that decisions to include certain words in a statute are intentional by the legislature. *Chatelain v. Kelley*, 322 Ark. 517, 524, 910 S.W.2d 215, 219 (1995) ("[T]he General Assembly knows how to include proper terminology or exclude it in accordance with its intent. . . .") *overruled on other grounds by Aka v. Jefferson Hosp. Ass'n*, 344 Ark. 627, 42 S.W.3d 508 (2001).

Under a plain reading of the Act's definition of hemp in Section 2, it limits hemp to something with a delta-9 THC concentration that is a percentage concentration of a wholly different cannabinoid, cannabidiol ("CBD")—when the 2018 Farm Bill does not. This definition creates an insurmountable obstacle to harvest hemp and would eliminate all legal hemp production in Arkansas because the new definition of hemp requires the total delta-9 THC concentration to be limited to—and calculated on account of— the plant's CBD concentration. Tr. 38:8–39:21.

This Court, like the district court below, is required to give meaning and effect to every word in Act 629 and to presume the additional terms are intentional. More than that, while Section 2 of the Act intentionally narrowed the definition of hemp, the General Assembly included the 2018 Farm Bill's

precise definition of hemp in Sections 7 and 10 of the Act related to the savings provisions. *See* Act 629 of 2023 §§ 7, 10; Ark. Code Ann. § 5-64-215; Ark. Code Ann. § 20-56-412. Under Arkansas law, "[w]here the language of a statute is plain and unambiguous, [the] court determines the legislative intent from the ordinary meaning of the language used" so that no word is left superfluous. *Simpson v. Cavalry SPV I, LLC*, 2014 Ark. 363, at 3, 440 S.W.3d 335, 337 (2014). Therefore, like the district court did below, this Court must take the Act's definition at face value.

Additionally, Act 629's definition of hemp criminalizes certain THCs, chemically converted products, and "psychoactive substances" as Schedule VI "synthetic substances," impermissibly creating a distinction based on method of manufacture in further conflict with the 2018 Farm Bill's definition of hemp. Ark. Code Ann. § 5-64-214(a)(5). Under the 2018 Farm Bill, the only way to distinguish controlled marijuana from legal hemp and its derivatives, extracts, and cannabinoids is the delta-9 THC concentration level. 7 U.S.C. § 1639*o*.

The 2018 Farm Bill "is unambiguous." *AK Futures LLC*, 35 F.4th at 692. Its definition of hemp, for purposes of the exclusion of THCs in hemp from federal controlled status, "does not limit its application according to the manner by which [the THCs, as derivatives, extracts, or cannabinoids] are

produced." *Id.* "Rather, [the definition] expressly applies to 'all' such downstream products so long as they do not cross the 0.3 percent delta-9 THC threshold." *Id.* (citing 7 U.S.C. § 1639*o*(1)). In other words, there is no "distinction based on manufacturing method." *Id.* It is "the source of the product—not the method of manufacture—[that] is the dispositive factor[.]" *Id.*

The recriminalization of certain THCs, chemically converted products, and "psychoactive substances" as Schedule VI "synthetic substances" under Section 6 of Act 629 creates a distinction based on method of manufacture that the Ninth Circuit rejected in *AK Futures*. Moreover, Section 6 conflicts with the plain language of Arkansas's own Industrial Hemp Production Act as well, which expressly states it does *not* regulate hemp processing practices or methodologies and is very clear that if *any* of its provisions conflict with federal law relating to hemp, the federal provisions control. *See* Ark. Code Ann. §§ 2-15-502(b) (Department of Agriculture lacks "authority to regulate hemp processing practices or methodologies") and 2-15-506 (federal law controls in the event of conflict with Arkansas law). Defendants do not confront these inconsistencies.

Instead, they mistakenly rely on correspondence with DEA that "synthetic THCs" are not hemp under the 2018 Farm Bill. Defendants-Appellants' Brief, pp. 23–26. However, the 2018 Farm Bill assigned the USDA as the sole federal regulator of hemp, thereby leaving no role for the DEA. *See* App. 266–85, R. Doc. 51-1. Moreover, given the lack of ambiguity in the 2018 Farm Bill, no consideration should be given to an agency's contrary interpretation. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984); *AK Futures LLC*, 35 F.4th at 692 ("[W]e need not consider the [DEA's] interpretation because § 1639*o* is unambiguous and precludes a distinction based on manufacturing method.").

Plaintiffs agree that true synthetic cannabinoids—man-made products that do not occur naturally—are dangerous and need to be controlled, and in fact they already are. As Plaintiffs' expert, Mr. Mark Krause, who is an experienced chemist, explained during his testimony at the hearing on injunctive relief, true synthetic cannabinoids, more commonly known as JWH compounds, K2, spice, or bath salts, are engineered in a lab and chemists are readily able to distinguish such compounds as synthetically produced. *See* Tr. 44:10–43:18. Unlike synthetic cannabinoids, delta-8 THC and delta-9 THC are but two of numerous naturally occurring cannabinoids

in the hemp plant. Tr. 41:19–42:8. As Mr. Krause explained, there is no way to differentiate their manufacturing method in a laboratory. Tr. 43:21–44:7.

Regardless, delta-8 and -9 THCs are naturally occurring cannabinoids and not synthetic cannabinoids. This indicates that the products are properly understood as a derivative, extract, or cannabinoid originating from the cannabis plant and containing "not more than 0.3 percent" delta-9 THC regardless of the manufacturing method.

But Defendants continue to conflate "hemp-derived cannabinoids" and "synthetic cannabinoids," and they expect this Court to believe the 2018 Farm Bill's and Act 629's definitions of hemp are the same despite these obvious textual and substantive differences. Defendants erroneously assert that Act 629's definition of "industrial hemp" better captures Congress's true intent when defining "hemp." Those arguments explain why the district court properly concluded that conflict preemption applies.

Arkansas's attempt in Act 629 to narrow the definition of hemp falls squarely within conflict preemption. As a result of Act 629's new definition, defendants recriminalize certain parts of the hemp plant and products contrary to Congress's clear intention in the 2018 Farm Bill to broaden the definition of hemp to redevelop a domestic supply chain of hemp and hemp products that flow freely in the stream of interstate commerce.

Next, Defendants argue that even if its definition of hemp does not comport with the federal government's definition, no conflict preemption can exist given that the 2018 Farm Bill contains an anti-preemption clause and a limiting preemption clause. Defendants-Appellants Brief, pp. 26–33. While Defendants are correct that the 2018 Farm Bill contains two separate clauses addressing preemption, neither clause bars the application of conflict preemption here.

Defendants incorrectly state that the existence of an express preemption clause imposes a higher burden on Plaintiffs in showing preemption of those laws. Defendants-Appellants Brief, p. 28. The Supreme Court held the opposite: "the existence of an express preemption provision does *not* bar the ordinary working of conflict preemption principles or impose a special burden that would make it more difficult to establish the preemption of laws falling outside the clause." *Arizona*, 567 U.S. at 406 (internal citations and quotations omitted) (emphasis in original). Therefore, although Congress expressly exempted any impediment by the states in the interstate transportation of hemp and hemp products, this does not foreclose the proposition that Congress also intended to prohibit states from changing the definition of hemp.

Moreover, the anti-preemption provision in the 2018 Farm Bill is limited in scope. It states that the 2018 Farm Bill does not "preempt[] or limit[] any law of a State or Indian tribe that–(i) regulates the production of hemp; and (ii) is more stringent than this subchapter." 7 U.S.C. § 1639*p*(a)(3); *see also* 7 U.S.C. § 1639*q*. This is not a carte blanche invitation to the states to redefine the term hemp or to criminalize certain hemp products. The 2018 Farm Bill makes clear that the only involvement allowed to the states was the opportunity to regulate the cultivation of hemp within their respective borders. But the State must agree with the federal government's definition as an initial matter.

Defendants also cite a nonbinding ruling from the Seventh Circuit, *C.Y. Wholesale, Inc. v. Holcomb*, 965 F.3d 541 (7th Cir. 2020), for the proposition that Act 629 is not preempted by the 2018 Farm Bill. While Defendants and the Seventh Circuit are correct that the 2018 Farm Bill does not preempt or limit more stringent state laws that regulate the production of hemp, this exception from the 2018 Farm Bill does not grant Arkansas power over more than just the cultivation of hemp. 7 U.S.C. § 1639p(a)(3). Defendants ignore the plain meaning of the term "production" in an agricultural sense and interpret this language to allow individual states to criminalize certain parts of the hemp plant on a whim.

The Seventh Circuit's reasoning in *C.Y. Wholesale* is further flawed in that it attempted to analogize hemp to a different psychoactive drug, salvia, in which Congress's "silence" as to that drug does not conflict with state laws to criminalize it. 965 F.3d at 548; *see also Duke's Investments LLC v. Char*, 2022 WL 17128976, at *13–15 (D. Haw. Nov. 22, 2022) (adopting *C.Y. Wholesale's* erroneous reasoning). Congress has not been silent regarding hemp–it has expressly defined it, removed it from the criminal code, and protected it in interstate commerce. 7 U.S.C. § 1639*o*.

Without confronting these issues, Defendants go on to mistakenly rely on comments from the Department of Agriculture. Defendants-Appellants' Brief, pp. 32–33. However, those comments simply reiterate that states in regulating their hemp programs may place requirements on the *production* of hemp more stringent than those set by the federal government. *See* Dep't of Agric. Final Rule, *Establishment of a Domestic Hemp Production Program*, 86 Fed. Reg. 5596, 5657 (Jan. 19, 2021) (Final Rule) ("AMS finds that the 2018 Farm Bill requires the implementation of federally mandated minimum standards, which all jurisdictions must follow, allowing for certain further restrictions by States and Indian Tribes."). Additionally, those rules further reinforce that "production," as used in the anti-preemption clause at 7 U.S.C. § 1639p(a)(3), only refers to cultivation. *Id.* at 5613 ("The term

'produce,' when used as a verb, is a common agricultural term that is often used synonymously with 'grow,' and means to propagate plants for market, or for cultivation for market, in the United States.").

Defendants also misconstrue the district court's opinion by suggesting that the court held that states that participate in the federal hemp production program may not regulate hemp any more stringently than federal law does. Defendants-Appellants' Brief, p. 33. The district court specifically noted in its ruling that a state, like Arkansas, that has opted into the federal hemp program can regulate hemp production within the state and can even institute more stringent requirements on the *production* of hemp than those set by the federal government. App. 355, R. Doc. 65-1, at 14. Those permissible, more stringent regulatory requirements are limited to the cultivation of hemp within the state (*i.e.*, licensing requirements, how many acres of hemp can be grown, what types of seeds can be used, etc.). The district court specifically held that conflict preemption was triggered by Arkansas's "changing definitions in a federal program, which it has already fully joined. . . ." App. 355, R. Doc. 65-1, at 14.

The 2018 Farm Bill prohibits states from changing the definition of hemp, and all derivatives thereof, which would otherwise frustrate Congress's clear purpose in decriminalizing hemp and creating a national

regulatory framework for hemp production as an agricultural commodity. As the district court correctly concluded, Act 629 conflicts with Congress's intent by narrowing the definition of hemp to products with a delta-9 THC concentration that is a percentage concentration of cannabidiol, and by criminalizing certain THCs, chemically converted products, and "psychoactive substances" as Schedule VI "synthetic substances," impermissibly creating a distinction based on method of manufacture.

The district court correctly held that Plaintiffs are "likely to succeed on their conflict preemption claim."

## C. The 2018 Farm Bill expressly preempts the State's attempt to criminalize the transportation of certain hemp products.

Act 629 is further preempted by the 2018 Farm Bill because it expressly preempts the State's prohibition on the noncontinuous transportation of hemp products like delta-8 through Arkansas.

Defendants erroneously argue that Act 629's savings clause in Section 7 is consistent with the 2018 Farm Bill. *See* Defendants-Appellants' Brief, p. 34. The district court again disagreed with Defendants and held that Act 629's exemption for interstate commerce was ineffective due to the inclusion of the undefined and vague term "continuous transportation." App. 356–57, R. Doc. 65-1, at 15–16. Therefore, the district court properly held that

Plaintiffs had shown that they were likely to succeed on their express preemption claim. App. 357, R. Doc. 65-1, at 16.

The Supremacy Clause of the United States Constitution gives Congress the power to preempt state law. *See generally Arizona*, 567 U.S. 387. When analyzing express preemption, the Supreme Court has stated that courts "must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress's pre-emptive intent." *Sprietsma v. Mercury Marine, a Div. of Brunswick Corp.*, 537 U.S. 51, 62–63 (2002) (quotations omitted).

Here, the express preemption provision in the 2018 Farm Bill prohibiting states from interfering with the transportation of hemp is unequivocal:

> SEC. 10114. INTERSTATE COMMERCE.
>
> (a) Rule of Construction. Nothing in this title or an amendment made by this title prohibits the interstate commerce of hemp (as defined in section 297A of the Agricultural Marketing Act of 1946 (as added by section 10113)) or hemp products.
>
> (b) Transportation of Hemp and Hemp Products. *No State or Indian Tribe shall prohibit the transportation or shipment of hemp or hemp products* produced in accordance with subtitle G of the Agricultural Marketing Act of 1946 (as added by section 10113) through the State or the territory of the Indian Tribe, as applicable.

Pub. L. 115-334, Title X, § 10114 (appended to 7 U.S.C. § 16390) (emphasis added). Act 629 interferes with the interstate transportation and shipment of hemp and hemp products in direct violation of the express language of the 2018 Farm Bill. On its face, if one cannot possess certain hemp products declared legal under federal law, then one cannot transport or ship it, either.

Act 629 attempts, but fails, to cure this defect by inserting the following opaque (and internally contradictory) provisions:

> This section does not prohibit the *continuous* transportation through Arkansas of the plant Cannabis sativa L., and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than three-tenths percent (0.3%) on a dry weight basis, produced in accordance with 7 U.S.C. § 20 16390 et seq.

Act 629 of 2023 § 7; Ark. Code Ann. § 5-64-215(d) (emphasis added).

> This subchapter does not prohibit in any form the *continuous* transportation through Arkansas of the plant Cannabis sativa L., and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a total delta-9 tetrahydrocannabinol concentration of not more than three-tenths percent (0.3%) on a dry weight basis, *from one licensed hemp producer in another state to a licensed hemp handler in another state.*

Act 629 of 2023 § 10; Ark. Code Ann. § 20-56-412(d) (emphasis added).

The 2018 Farm Bill expressly prohibits states from interfering with the interstate transportation of hemp. This express preemption was affirmed in the USDA's Final Rule implementing the 2018 Farm Bill: "In addition to establishing a national regulatory framework for hemp production, Congress expressly preempted State law with regard to the interstate transportation of hemp." *Final Rule*, 86 Fed. Reg. at 5663; *see also* App. 315, R. Doc.51-3, at 10 (USDA General Counsel memo concluding that the 2018 Farm Bill "preempts State law to the extent such State law prohibits the interstate transportation or shipment of hemp").

While the definition of hemp in Sections 7 and 10 match the 2018 Farm Bill's definition, an additional burden has been added to interstate transportation of hemp and hemp products. The Act's attempt to criminalize hemp as a controlled substance when it is not in "continuous transportation" defies congressional intent as a prohibition against hemp in transportation or shipment.

The 2018 Farm Bill preempts and forbids Arkansas from "prohibit[ing] the transportation or shipment of hemp or hemp products produced in accordance with [the 2018 Farm Bill]"—full stop. 7 U.S.C. § 16390; Pub. L. 115-334, Title X, § 10114.

The 2018 Farm Bill contains no requirement of "continuous transportation." Moreover, Section 10 of Act 629 specifies which types of licensees *outside* of Arkansas are permitted to transport through the state, in further direct violation of the 2018 Farm Bill's interstate commerce protections. Act 629 of 2023 § 10; Ark. Code Ann. § 20-56-412(d).

In support of their argument that the Section 7 exemption with its inclusion of "continuous transportation" language should be understood to include transportation with brief stops, Defendants rely on a comment in *C.Y. Wholesale* that they attempt to represent as that court's holding. *See* Defendants-Appellants' Brief, at pp. 35–36. The Seventh Circuit, in dicta, did state, "Finally, we say a few words about Act 335 . . . . Act 335 clarifies that Indiana's prohibition on the delivery and possession of smokable hemp does not apply to shipments from producers in other states that simply pass through Indiana.*" C.Y. Wholesale, Inc.*, 965 F.3d at 549. However, given that Act 335 and its interstate commerce exemption had yet to be enacted at the time of the appeal, the Seventh Circuit did not decide whether Act 335's interstate exemption clause violated the 2018 Farm Bill's express preemption clause. *C.Y. Wholesale, Inc.*, 965 F.3d at 549. The Eighth Circuit "need not follow dicta"—and certainly not the dicta from a nonbinding court. *Sanzone v. Mercy Health*, 954 F.3d 1031, 1039 (8th Cir. 2020).

Defendants also cite several other cases for the proposition that "continuous transportation" unambiguously includes stops. *See* Defendants-Appellants' Brief, at pp. 36–37. They first cite *Century Indemnity Co. v. Carlson*, in support of their inclusion of "continuous transportation" in the interstate commerce exemption. 133 F.3d 591 (8th Cir. 1998). But the Court's analysis was only applicable to the Form MCS–90 policy endorsement for motor carriers, and Plaintiffs are not motor carriers.

Defendants further misconstrue the holding of *United States v. Tucor Int'l, Inc.*, 189 F.3d 834 (9th Cir. 1999). *See* Defendants-Appellants' Brief, at p. 37. In *Tucor*, the Court held that because the federal statute defined "through transportation," there was no ambiguity under the Shipping Act's antitrust exemption. 189 F.3d at 836. But Act 629 contains no definition of "continuous transportation," and *Tucor* only illustrates why Act 629 is unconstitutional.

Defendants then argue that even if "continuous transportation" is considered ambiguous, the district court should have given deference to the state legislature and read the statute to avoid conflict with the 2018 Farm Bill's express preemption clause. *See* Defendants-Appellants' Brief, p. 37 (citing *Ark. Times LP v. Waldrip*, 37 F.4th 1386 (8th Cir. 2022)). Defendants go on to state that "Section 7 was obviously intended to avoid preemption, as

even the district court acknowledged." *Id.* While the district court held that Section 7 "attempt[ed] to address the interstate commerce issue," because "'[c]ontinuous transportation' is not defined or explained in Act 629 or elsewhere," this attempt was "ineffective." App. 356, R. Doc. 65-1, at 15.

Arkansas courts generally follow the same rules of statutory interpretation as this Court. *See Mamo Transp., Inc. v. Williams*, 375 Ark. 97, 100, 289 S.W.3d 79, 83 (2008). "A statute is ambiguous where it is open to two or more constructions, or where it is of such obscure or doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning." *Yamaha Motor Corp., U.S.A. v. Richard's Honda Yamaha*, 344 Ark. 44, 52, 38 S.W.3d 356, 360 (2001). Construing Act 629 "just as it reads," Sections 7 and 10 criminalize certain hemp products that are not "in continuous transportation" as controlled substances. The statute simply does not define or explain what constitutes "continuous transportation" through Arkansas. This absence leaves reasonable minds, including Plaintiffs and the district court, to speculate regarding the meaning of the statute, thereby rendering the Act ambiguous.

When a statute is ambiguous, Arkansas courts examine the whole act of which the statute is a part in determining legislative intent. *Cent. & S. Cos. v. Weiss*, 339 Ark. 76, 82, 3 S.W.3d 294, 298 (1999). "[L]egislative history,

the language, and the subject matter involved" are also relevant. *Id.*, 3 S.W.3d at 298. Defendants point to no legislative history or other persuasive authority to support their contention that "the Arkansas legislature patently intended Section 7 to avoid preemption." *See* Defendants-Appellants' Brief, p. 37.

Of note, the General Assembly copied word-for-word the 2018 Farm Bill's definition of hemp when drafting Act 629's exemption provisions, which it chose not to do when defining hemp in Section 2 of the Act. However, instead of taking the remaining express preemption language from the 2018 Farm Bill, the General Assembly chose not to do so. Instead, it chose to intentionally include the word "continuous" into Act 629's exemption provisions, where such qualifier was not included in the 2018 Farm Bill's express preemption clause. Arkansas courts would infer this choice as deliberate, evidencing a different legislative intent. *See Bush v. State*, 338 Ark. 772, 777, 2 S.W.3d 761, 764 (1999); *Chatelain*, 322 Ark. at 524, 910 S.W.2d at 219.

Plaintiffs cannot know what "in continuous transportation" means, and the protection for "continuous transportation" does not even apply until the first sections of Act 629 are enjoined. Plaintiffs Sky Marketing and Smoker Friendly transport and ship hemp-derived cannabinoid products

like Delta-8 THC into and through Arkansas. Under Act 629, their employees face potential criminal liability for transporting and shipping hemp products if they failed to demonstrate the products were "in continuous transportation" and "produced in accordance with 7 U.S.C. § 1639*o et seq*."

Without the district court's preliminary injunction, farmers and other small businesses would be forced to route their products around Arkansas, and overnight, those in possession of otherwise lawful products will be converted into criminals. Because the 2018 Farm Bill expressly preempts any prohibition on the interstate transport of legal hemp and hemp products, Act 629 is unconstitutional under the Supremacy Clause of the United States Constitution.

**D.  Act 629 is unconstitutionally vague under the Due Process clause of the Fifth and Fourteenth Amendments.**

Act 629 contains numerous internal inconsistencies and fails to provide notice as to what contemplated conduct is forbidden and what is permitted regarding production, possession, transportation, and shipment of hemp products it seeks to ban. The district court correctly held that the Act fails to define various vague terms, including "continuous transportation," "synthetic substance," and "psychoactive substances." App. 357, R. Doc. 65-1, at 16. Defendants argue that these terms are not vague as

they are well known and cite Webster's Dictionary to define those terms. *See* Defendants-Appellants' Brief, pp. 40–41. The Fifth Amendment commands more.

"The Fifth Amendment guarantees every citizen the right to due process. Stemming from this guarantee is the concept that vague statutes are void." *United States v. Washam*, 312 F.3d 926, 929 (8th Cir. 2002). "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Laws and ordinances must give a "person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Id.* A vague law leads "citizens to 'steer far wider of the lawful zone . . . than if the boundaries of the forbidden areas were clearly marked.'" *Id.* at 108–09 (quoting *Baggett v. Bullitt*, 377 U.S. 360, 372 (1964)).

As the district court correctly held, Act 629 fails to give a person of ordinary intelligence, let alone "an exceptionally intelligent reader," fair notice as to what contemplated conduct is forbidden and what is permitted regarding the production, possession, transportation, and shipment of the hemp products it seeks to ban. App. 357, R. Doc. 65-1, at 16. Without the

preliminary injunction, Plaintiffs and the end-users in the stream of commerce are left to guess as to the meaning of Act 629.

Based on the narrowed definition of "industrial hemp" in Section 2 of Act 629, the Act limits hemp to something with a delta-9 THC concentration that is a percentage concentration of a wholly different cannabinoid, CBD—when the 2018 Farm Bill does not. Plaintiffs' expert explained that "to try to relate the concentration of delta-9 THC to the amount of CBD that the plant produces makes no sense at all." Tr. 39:12-14. Act 629's definition of hemp equates to asking how many apples are in an orange or how many Toyotas are in a Ford. Based on this nonsensical definition, farmers awaiting harvest and those intending to plant seeds have no idea how to grow a plant which is required to meet a delta-9 THC concentration level that is a specific fraction of the CBD concentrations. No seeds on the market can guarantee this ratio, nor can hemp be tested to meet Act 629's definition. Tr. 45:20-46:21.

Additionally, Act 629's definition of hemp also criminalizes certain THCs, chemically converted products, and "psychoactive substances" as Schedule VI "synthetic substances," impermissibly creating a distinction based on method of manufacture. Defendants argue that "synthetic substances" is not vague as the statute specifically enumerates what those synthetic substances are. Defendants-Appellants' Brief, p. 40. But the

enumerated list contains several substances which are, in the opinion of Plaintiffs' expert, not synthetic, including delta-8 THC and delta-9 THC. Tr. 42:4–20.

Defendants conflate "hemp-derived cannabinoids" and "synthetic cannabinoids"—man-made products that do not occur naturally. *See* Tr. 42:10–43:18. Unlike synthetic "cannabinoids" (which are not actually cannabinoids), delta-8 and -9 THCs, along with several others, are naturally occurring cannabinoids in the hemp plant. Tr. 42:2–8. Defendants argue that THCs like delta-8 or -9, that are produced as a result of a chemical process converted from "industrial hemp" or some other substance contained therein are illegal like K2, spice, or bath salts. Defendants-Appellants' Brief, pp. 24–26. As Mr. Krause explained, there is no way to determine in the lab whether delta-8 or -9 THC is derived from a hemp plant or through an impermissible chemical process because they are analytically the same, and synthesis is not the only method of deriving delta-8 from hemp. Tr. 43:21–44:7.

Delta-8 and -9 THCs are naturally occurring cannabinoids and not synthetic cannabinoids. *See* Tr. 42:4–8. Hemp products like delta-8 are properly understood as a derivative, extract, or cannabinoid originating from the cannabis plant and containing "not more than 0.3 percent" delta-9.

Nonetheless, Section 6 of Act 629 appears to ban these federally legal substances under the impermissible distinction of "synthetic substances" based on the method of manufacture.

Defendants chide Plaintiffs as disingenuous for not knowing what constitutes a "synthetic substance" under Act 629 and simultaneously argue that, because Plaintiffs' expert, a chemist, was able to provide a definition of "synthetic" at the hearing, "synthetic substance" is not vague. Defendants-Appellants' Brief, p. 41. However, even the Arkansas Tobacco Control Board does not understand this apparent distinction regarding "synthetic substances." After Act 629 was in effect but before the preliminary injunction was ordered, an Arkansas Tobacco Control officer, who inspected one of the retail stores of Plaintiff Drippers Vape Shop, directed an employee to remove a hemp product containing 0.3% or less of delta-9 THC, regardless of whether that product was naturally extracted or produced from routine processes. Tr. 89:1–91:3. Given Plaintiffs' lack of chemical expertise, this recent encounter with an Arkansas Tobacco Control officer, and the lack of definition or explanation of "synthetic substance" in the Act, it is completely reasonable for Plaintiffs to not know whether the hemp products in their stores constitute "synthetic substances" as criminalized under Act 629. *See* Tr. 97:4-13.

Moreover, Defendants refer to a dictionary's definition of "synthetic substance" as well as a federal statute's definition as evidence that such a term is not vague. *Id.* at p. 40. However, on their face, these definitions are quite distinct. Congress recognized that its use of "synthetic substance" in the legislation, without providing a clear definition, might not be understood by a person of ordinary intelligence, and therefore, Congress properly defined "synthetic substance" that does not include "hemp." 7 U.S.C. § 6502; PL 101–624. The Arkansas legislature did not supply a definition, and Defendants cannot graft one into the Act.

Defendants similarly cannot manufacture a definition of "psychoactive substance" where none is supplied by Act 629. Defendants argue that "psychoactive substance" as listed in the Act "functions as a catch-all to capture unenumerated types of THC that share the enumerated types' psychoactive qualities." Defendants-Appellants' Brief, p. 41. This is Defendants' reading of this provision today. However, that has not always been so. Moreover, that was not how the Arkansas Department of Finance and Administration and Arkansas Tobacco Control interpreted the Act when it distributed a flyer to retailers threatening them to stop selling or possessing "[p]roducts that were produced by a synthetic chemical process that converted hemp into Delta-8, Delta-9, Delta-6a, 10a, Delta 10-THC, or

any other psychoactive substance derived therein. . . ." App. 11, R. Doc. 2-1. Those agencies understood the "psychoactive substance derived therein" to apply to any hemp derivatives, not just THCs with "psychoactive qualities" similar to those enumerated in Section 6.

Even taking Defendants' argument as it stands today, this still leaves the problem of what those "psychoactive qualities" might entail. Defendants counter by arguing that "psychoactive substance" read in isolation is not vague and provides two different dictionaries' definitions as proof of such. *Id.* at pp. 41–42 ("A psychoactive substance is 'a substance having a profound or significant effect on mental processes.' A 'psychoactive' substance is one 'affecting the mind or behavior.'" (citations omitted)). These definitions are clearly distinct, further illustrating that "psychoactive substance" can significantly vary in its understanding and requires definition.

Based on either of the Defendants' definitions, "psychoactive substance" would encompass CBD, which is understood to be "psychoactive" by industry experts (as are caffeine and sugar). Act 629 of 2023 § 6; Ark. Code Ann. § 5-64-215(a)(5)(j); *see* Tr. 45:11-19. Hemp products containing 0.3% or less THC and even CBD could therefore be considered "psychoactive substances," which are banned by Act 629.

Finally, Act 629 fails to define "continuous transportation" in its savings provisions, and that failure is just one reason why the Act is unconstitutional. In determining that Act 629 is unconstitutionally vague, the district court also addressed various undefined terms and unclear standards in Section 10 of the Act. App. 357, R. Doc. 65-1, at 16. Despite the centrality of the analysis of Section 10 in the district court's holding that the Act was void for vagueness, Defendants simply address this section in a footnote stating that Section 10 does "not become effective unless Act 629's primary provisions were enjoined." *See* Defendants-Appellants' Brief, p. 38 n.4. Given the numerous internal inconsistencies with the Act and the serious constitutional concerns with those "primary provisions" of the Act as discussed above, Section 10 may very well be effective unless the entirety of the Act remains enjoined.

Defendants do not engage with Section 10 and the reason why is simple: Section 10 of Act 629 is unconstitutionally vague. It states that a hemp-derived product "shall not be combined with or contain any . . . amount of tetrahydrocannabinol as to create a danger of misuse, overdose, accidental overconsumption, inaccurate dosage, or other risk to the public." Act 629 of 2023 § 10; Ark. Code Ann. § 20-56-403. Act 629 provides no basis to measure what amount of tetrahydrocannabinol constitutes a "danger of

misuse" or a "risk to the public," or even what amount constitutes an *accurate* dosage or *proper* consumption.  *See* App. 266–85, R. Doc. 51-1.

The Act appears on its face to recriminalize all hemp products "produced as a result of a synthetic chemical process"–including delta-8, along with "[a]ny other psychoactive substance derived [from hemp]."  Even Defendants do not know what Act 629 means.  Tr. 89:1–91:3. On its face, Act 629 contains numerous internal inconsistencies and fails to provide notice to individuals of ordinary intelligence what contemplated conduct is forbidden and what is permitted regarding production, possession, transportation, and shipment of hemp and hemp products it seeks to ban.

The Court should proudly affirm the district court's holding that Act 629 is unconstitutionally vague.

## II.  THE REMAINING FACTORS REQUIRED FOR A PRELIMINARY INJUNCTION WEIGH IN PLAINTIFFS' FAVOR.

In addition to showing the likelihood of success on at least one of their claims, in order to obtain a preliminary injunction, Plaintiffs also established that: (1) they are likely to suffer irreparable harm in the absence of preliminary relief; (2) the balance of equities favors the plaintiffs; and (3) an injunction would serve the public interest. *Winter*, 555 U.S. at 20. When the

government is the defendant, as here, those last two prongs merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). These remaining balancing factors are reviewed for "abuse of discretion." *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 893 (8th Cir. 2013). The "abuse of discretion" standard means "the court has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." *Kern v. TXO Prod. Corp.*, 738 F.2d 968, 970 (8th Cir. 1984); *see also Aaron*, 357 F.3d at 774 (referring to this "range-of-choice" principle when reviewing a preliminary injunction order).

## A. The district court correctly found that Plaintiffs are likely to suffer irreparable harm in the absence of preliminary injunctive relief.

"The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Rounds*, 530 F.3d at 732 n.5. Here, the district court properly held that "Plaintiffs have shown that, in the absence of preliminary injunctive relief, they are likely to suffer irreparable harm for which they have no adequate remedy at law." App. 358, R. Doc. 65-1, at 17. The district court considered the facts and determined that Plaintiffs faced the "credible threat of criminal sanctions" as well as "the financial losses [Plaintiffs] stand to suffer by complying with the likely unconstitutional portions of the statute [which] cannot be easily measured

or reliably calculated." App. 358; R. Doc. 65-1, at 17; *see also MKB Mgmt. Corp. v. Burdick*, 954 F. Supp. 2d 900, 912 (D.N.D. 2013) (finding that "[t]he threat of criminal prosecution, the potential for the closing of the clinic, and the violation of patient rights is more than sufficient to show a threat of irreparable harm not compensable by money damages.").

Here, Plaintiffs established that they will suffer irreparable if this preliminary injunction is not affirmed because they have no other adequate remedy at law. Moreover, if a party can establish a sufficient likelihood of success on the merits of a constitutional claim, as the district court concluded that Plaintiffs had accomplished, "the party will also have established irreparable harm as a result of the deprivation." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Defendants do not dispute that Plaintiffs' claims of irreparable harm are valid.

Complying with the Act cannot be easily measured or reliably calculated. *See Chlorine Inst., Inc. v. Soo Line R.R.*, 792 F.3d 903, 915 (8th Cir. 2015) (concluding loss of consumer goodwill can be irreparable harm and economic loss can justify irreparable injury unless those losses can be readily calculated and recoverable). The Act provides no safe harbor, and the mere possession exposes Plaintiffs and their employees to criminal sanction. At the hearing, Plaintiffs testified as to their uncertainty of which hemp

products would not be permissible to produce, possess, sell, or transport under Act 629 and their corresponding uncertainty surrounding their potential financial losses. *See* Tr. 76:17–103:15. Should the preliminary injunction not be affirmed, while the financial harm is unknowable, the possibility of financial ruin is present given that the Act renders Plaintiffs' hemp and hemp products illegal and completely worthless.

Plaintiffs' clients will also be confused about which products they can possess, what to do with the products they purchased, and whether they can return those products to Plaintiffs or their point of purchase. In each case, every element of the existing stream of commerce will face criminal liability for the mere possession of a federally lawful product. Plaintiffs established that they stand to lose their goodwill with consumers, which is exceptionally difficult to measure in the relatively new hemp products industry.

The threat of irreparable harm to the Plaintiffs manifested in the incident wherein an Arkansas Tobacco Control officer directed Plaintiff Drippers Vape Shop's employee to remove a hemp product containing 0.3% or less of delta-9 THC, regardless of whether that product was naturally extracted or produced as a result of routine chemical processes, and by the Act 629 flyer that the State circulated. Tr. 89:1–91:3; App. 11, R. Doc. 2-1.

If the district court's preliminary injunction is not affirmed, law enforcement, acting under Act 629's authority, may arrest and prosecute those like Plaintiffs who cultivate, sell, possess, or transport hemp-derived cannabinoid products in compliance with the 2018 Farm Bill. This threat of criminal sanction constitutes irreparable harm. *See Wooley v. Maynard*, 430 U.S. 705, 712 (1977) (holding that the threat of future criminal prosecutions justifies grant of injunctive relief); *see also Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) (holding that likelihood of irreparable harm established by "demonstrat[ing] a credible threat of prosecution under the statute").

The district court properly exercised its discretion in concluding that, without this preliminary injunction, Plaintiffs will suffer irreparable harm.

## B. The balance of equities weighs in Plaintiffs' favor, and a preliminary injunction serves the public interest.

The last two *Winter* factors merge when an injunction is sought against the government. *See Nken*, 556 U.S. at 435. In balancing the harms, courts must examine the harm of granting or denying an injunction upon both of the parties to the dispute and upon other interested parties. *Dataphase,* 640 F.2d at 114; *see also Glenwood Bridge, Inc. v. City of Minneapolis*, 940 F.2d 367, 372 (8th Cir. 1991). The Court considers the threat to each of the party's rights that would result from granting or denying the injunction. *Baker Elec.*

*Co-op. v. Chaske*, 28 F.3d 1466, 1473 (8th Cir. 1994). The potential economic harm to each of the parties and to interested third parties of either granting or denying the injunction is also relevant. *Id*.

The district court correctly held that Plaintiffs were and would continue to suffer irreparable harms unless Act 629 was enjoined, including "a credible threat of criminal prosecution that could affect Plaintiffs' ability to procure a license to grow or handle legal hemp as well as an untold amount of lost profits." App. 358 R. Doc. 65-1, at 17. Defendants only reference Plaintiffs' asserted monetary harms to be weighed against the State's asserted harms, but they fail to recognize the threat of criminal prosecution as another irreparable harm Act 629 imposed on Plaintiffs. *See* Defendants-Appellants' Brief, pp. 42–43.

The district court did not ignore Defendants' alleged harms; rather, it properly exercised its discretion and held that the "[p]otential harm to Defendants is negligible." App. 358, R. Doc. 65-1, at 17. And Defendants otherwise overstate their harm now by misconstruing a footnote in *Abbott v. Perez*, 585 U.S. ___, 138 S. Ct. 2305, 2324 n.17 (2018), for the proposition that the inability to enforce a state's statute constitutes irreparable harm to the state. *See* Defendants-Appellants' Brief, p. 43. But Defendants forget that irreparable harm to the state can only exist if the statute is constitutional.

*Abbott*, 138 S. Ct. at 2324 ("*Unless that statute is unconstitutional*, this would seriously and irreparably harm the State.") (emphasis added). While "States have an interest in seeing that their statutes are given effect . . . the Supremacy Clause provides that federal law is supreme in the event of a conflict, and therefore any State interest in enforcement of its laws must comparably give way when they conflict with federal law." *Seaman v. Virgina*, 593 F. Supp. 3d 293, 328 (W.D. Va. 2022); *see also Annex Books, Inc. v. City of Indianapolis*, 673 F. Supp. 2d 750, 757 (S.D. Ind. 2009), *aff'd sub nom. Annex Books, Inc. v. City of Indianapolis, Ind.*, 624 F.3d 368 (7th Cir. 2010) ("[T]here can be no irreparable harm to a municipality when it is prevented from enforcing an unconstitutional statute") (internal citations and quotations omitted).

Moreover, where a state law conflicts with the purpose of a federal law, the public interest favors the latter. It is axiomatic that the public interest is served by upholding the Constitution and preventing the enforcement of unconstitutional laws. *Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008) ("[I]t is always in the public interest to protect constitutional rights."), *overruled on other grounds by Phelps-Roper v. City of Manchester, Mo.*, 697 F.3d 678 (8th Cir. 2012).

Here, the district court held that Act 629 is likely unconstitutional as it is void for vagueness and is both expressly and conflict-preempted by the 2018 Farm Bill. App. 358, R. Doc. 65-1, at 17. Therefore, the Defendants face no irreparable harm by the district court's enjoining of Act 629 as Defendants and the public have no interest in the enforcement of an unconstitutional act. App. 358, R. Doc. 65-1, at 17.

The balancing of the equitable harms weighs in Plaintiffs' favor. If the Court does not affirm this preliminary injunction, Plaintiffs' businesses will face financial harm by no longer being able to produce, possess, sell, or transport hemp products that the federal government has declared legal. Further, without this injunction, Plaintiffs must face this harm all while remaining subject to criminal prosecution. Every end-user of Plaintiffs' products will face the same sanction.

In contrast, if the Court affirms the preliminary injunction, the State will suffer no harm, because the preliminary injunction merely preserves the status quo and precludes the State from enforcing a statute that violates the 2018 Farm Bill and United States Constitution. The district court did not abuse its discretion in holding that the balancing of equities weighs in Plaintiffs' favor and that the public does not have an interest in the enforcement of Act 629 given that it is unconstitutional.

## III. THE GOVERNOR AND ATTORNEY GENERAL ARE NOT ENTITLED TO SOVEREIGN IMMUNITY.

The district court correctly found that the Governor and Attorney General have some connection with the enforcement of Act 629 such that they fall within the *Ex parte Young* exception to sovereign immunity. Under the *Ex parte Young* exception, the Eleventh Amendment does not prevent "a federal court [from] command[ing that] a state official . . . refrain from violating federal law . . . ." *Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011). As this Court has recognized, like here, "when the relief sought is prospective injunctive relief, the request is ordinarily sufficient to invoke the *Young* fiction." *Gibson v. Arkansas Dept. of Correction*, 265 F.3d 718, 720 (8th Cir. 2001) (citing *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 281 (1997)).

Not all state officials are subject to being enjoined from violating federal law under *Ex parte Young*; the only officials who can properly be enjoined are those who have "some connection with the enforcement of the act." *Ex parte Young*, 209 U.S. 123, 157 (1908). However, "[a] state official" requisite connection with the enforcement of a state statute" need not directly stem from "or be specially created by the act itself." *Dig. Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 960 (8th Cir. 2015) (internal

quotations omitted). The connection can, instead, "arise out of the general law." *Id.* (internal quotations omitted).

Here, the Governor enforces the provisions of Act 629 through her control of the Arkansas Alcoholic Beverage Control, Arkansas Tobacco Control, and Arkansas State Plant Board, among others, through the operation of the Arkansas Transformation and Efficiencies Act's creation of cabinet-level secretaries. *See* Tr. 14:2–9. These entities enforce the provisions of Act 629 and are subject to the Governor's control and direction regarding how Act 629 is enforced. She may control the direct methods of enforcement. *Church v. Missouri*, 913 F.3d 736, 749 (8th Cir. 2019). Thus, the Governor's connection to the control of Act 629 arises out of the general law as contemplated by *Ex parte Young*, 209 U.S. at 157. Act 629's plain text indicates that the Arkansas Tobacco Control "enforce[es]" its provisions, and a duty is placed on all other officials "to assist" the Arkansas Tobacco Control to enforce it. Ark. Code Ann. § 20-56-412. Not only does this duty extend to the Governor, meaning she has a duty to assist in the Act's enforcement, but it also demonstrates an intention for Act 629 to be enforced by the executive and not local prosecutors.

Accordingly, the Governor's connection to Act 629 is not dependent on "the executive power of the governor" without more. Defendants-Appellants' Brief, p. 45. The Governor's connection to Act 629 arises from here administrative control over the Act's enforcement.

The Attorney General is also a proper party because his role is not limited to "advising state officials on the constitutionality of" Act 629, as suggested by Defendants-Appellants and as was the case in *Digital Recognition Network*. Defendants-Appellants' Brief, p. 47; 803 F.3d at 962. Certain provisions of Act 629 "become effective only upon the certification of the Arkansas Attorney General . . . ." *See, e.g.*, App. 252; R. Doc 51 at 19, ¶ 77, R. Doc 66 at 9, n38; Act 629 of 2023 § 17; Ark. Code Ann. §§ 20-56-405, -413.

Beyond reflecting the General Assembly's expectation that Section 2's definition of hemp would result in a proper injunction, the contingent effective language of Act 629 requires the Attorney General to play a part. The Attorney General is definitionally a proper *Ex parte Young* defendant.

Act 629 is not like the Reader System Act in *Digital Recognition Network*. There, as this Court determined, injunctive relief against the Attorney General would not redress Digital Recognition's injury because it would not prevent the Act from being enforced by private individuals. 803

F.3d at 958. The opposite is true here. Enforcement of the preempted provisions of Act 629 is prevented because the injunctive relief imposed by the district court against the Attorney General. And because Plaintiffs-Appellees' harm can be redressed by enjoining the Attorney General, it demonstrates that he has some connection to enforcing Act 629. *See Dig. Recognition Network*, 803 F.3d at 958 (explaining how an injury is redressable if "*the effect of the court's judgment on the defendant*" prevents harm to the plaintiff "whether directly or indirectly") (emphasis in original) (quoting *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1159 (10th Cir. 2005)).

The injunction currently in effect against the Attorney General has prevented him from making a certification and triggering the mechanism that makes the alternative sections of Act 629 in effect—sections that are also unconstitutional. App. 252; R. Doc 51 at 19, ¶ 77, R. Doc 66 at 9, n.38; Act 629 of 2023 § 17; Ark. Code Ann. §§ 20-56-405, -413. This is the exact prospective relief that Plaintiffs-Appellees sought, and the specific relief contemplated by the *Ex parte Young* exception—prospective relief. So, the injunction against the Attorney General continues to protect Plaintiffs-Appellees from additional harm because it prevents the alternate sections of Act 629 from going into effect and being enforced at all. The injunction against the Attorney General has prevented the Attorney General, and

others, from doing "something contrary to federal law" as contemplated by *Ex parte Young*. *Gibson*, 265 F.3d at 719–20.

The Governor and Attorney General are proper defendants under the *Ex parte Young*, but even if they are not, it is immaterial to the merits of this action: the district court properly found that Plaintiffs-Appellees were entitled to injunctive relief.

## CONCLUSION

For the foregoing reasons, this Court should uphold the district court's order granting a preliminary injunction and denying Separate Defendants' motion to dismiss the Governor and Attorney General.

Dated: January 16, 2024

Respectfully submitted,

/s/ Abtin Mehdizadegan
Abtin Mehdizadegan (2013136)
Allison T. Scott (2020205)
Joseph C. Stepina (2020124)
HALL BOOTH SMITH, P.C.
200 River Market Ave., Ste. 500
Little Rock, Arkansas 72201
Telephone: (501) 214-3499
Facsimile: (501) 604-5566
abtin@hallboothsmith.com
jstepina@hallboothsmith.com
allisonscott@hallboothsmith.com

- and -

Justin Swanson (*pro hac vice*)
Paul Vink (*pro hac vice*)
BOSE MCKINNEY & EVANS, LLP
111 Monument Circle, Suite 2700
Indianapolis, IN 46204
Telephone: (317) 684-5404
Facsimile: (317) 223-0404
jswanson@boselaw.com
pvink@boselaw.com

*Counsel for Appellees*

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the motion exempted by Fed. R. App. P. 32(f), this document contains 12,610 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), because this document has been prepared in a proportionally spaced typeface using Microsoft Office Word 2016 in 14 point Georgia.

3.      Pursuant to Local Rule 28.1(h)(2), this document has been scanned for viruses and is virus-free.

Dated: January 16, 2024

*/s/ Abtin Mehdizadegan*
Abtin Mehdizadegan
*Counsel for Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Abtin Mehdizadegan*
Abtin Mehdizadegan
