# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

_____

### Case No. 23-3237
_____

### BIO GEN, LLC, ET AL,
### *Plaintiffs-Appellees*

### v.

### SARAH HUCKABEE SANDERS, ET AL.,
### *Defendants-Appellants*

_____

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## JUDGE BILLY ROY WILSON, PRESIDING
_____

## BRIEF OF *AMICUS CURIAE*
## HEMP INDUSTRIES ASSOCIATION
## IN SUPPORT OF APPELLEES FOR AFFIRMANCE
_____

Lee Curry, Attorney-at-Law
3548 Village Walk Drive
Bryant, AR 72022
(870) 510-1433
Lee@LeeCurryLawFirm.com

Attorney for *Amicus Curiae*

## CORPORATE DISCLOSURE STATEMENT

The Hemp Industries Association makes this disclosure pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure. The Hemp Industries Association is a non-profit corporation that is not publicly traded.

i

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ......................................... i

TABLE OF CONTENTS .................................................................. ii

TABLE OF AUTHORITIES ............................................................ iii

STATEMENT OF IDENTITY AND INTEREST
OF *AMICUS CURIAE* ................................................................. 1

ARGUMENT ..........................................................................

    1. A plain reading of the 2018 Farm Bill compels the conclusion that all hemp-derived cannabinoids under .3% delta 9 THC are legal products. ........................................................................... 4

    2. Hemp-derived products are manufactured by properly licensed individuals and should not be conflated or confused with illegal compounds like "spice" ...................................................... 6

    3. The term "production" is a term of art with a clear definition in statute that compliments the protection of hemp and hemp products traveling through interstate commerce ......................................... 12

CONCLUSION ...................................................................... 15

CERTIFICATE OF SERVICE ........................................................ 16

CERTIFICATE OF COMPLIANCE ..................................................... a

Appellate Case: 23-3237    Page: 3    Date Filed: 02/06/2024 Entry ID: 5360551

# TABLE OF AUTHORTIES

## Statutes and Rules.

7 U.S.C. § 1639o(1)………………………………………………4
7 U.S.C. § 1639o, note *b* ………………………………………13-14
7 U.S.C. § 1639p(a)(1)(A)(ii) ……………………………………12
7 U.S.C. § 1639p(a)(2)(A)(ii)……………………………………12
7 U.S.C. § 1639p(e)(2)(C) ………………………………………14
7 U.S.C. § 1639q(a)(2)(B) ………………………………………12
21 U.S.C. § 802(16)(B)……………………………………………4
7 CFR § 990.1 ……………………………………………………13
7 CFR § 718.2 ……………………………………………………13
Fed. R. App. P. 29(a)(4)(E) ………………………………………3

## Other Authorities

Adrian Andrews, *Florida Lawmakers Pass Hemp Regulation Bill without THC Caps*, WUSF (May 3, 2023), https://www.wusf.org/politics-issues/2023-05-03/fl-lawmakers-pass-hemp-regulation-bill-without-thc-caps-heads-to-desantis-desk [https://perma.cc/8ENV-JWU2]……………11

Beau R. Whitney and Beau Wilberding, *2023 National Cannabinoid Report*, Whitney Economics at p. 4 (October 2023), https://whitneyeconomics.com/report/2023-us-national-cannabinoid-report (downloaded Jan. 23, 2024)……………………………………6

Sierra Hignite, *Fire Department Sparks Conversations after Allowing Staff to Use CBD Products Including Delta-8*, FOX59 News (July 12, 2023), https://fox59.com/indiana-news/fire-department-sparks-conversations-after-allowing-staff-to-use-cbd-products-including-delta-8/ [https://perma.cc/9WPS-YHT6]…………………………………7

*Definition of ISOMER,* Merriam-Webster, https://www.merriam-webster.com/dictionary/isomer [https://perma.cc/S4T7-WW3D] (accessed Jan. 23, 2024)……………………………………………………7

*Implementation of the Agriculture Improvement Act of 2018*, 85 F.R. 51639, 51641 (Aug. 21, 2020), https://www.federalregister.gov/documents/2020/08/21/2020-

Appellate Case: 23-3237    Page: 4    Date Filed: 02/06/2024 Entry ID: 5360551

17356/implementation-of-the-agriculture-improvement-act-of-2018 [https://perma.cc/JC52-AF5V]…………….......................................8

*Kentucky House OKs Bill to Regulate Hemp-Derived Delta-8 THC*, US News & World Report (Mar. 9, 2023), https://www.usnews.com/news/best-states/kentucky/articles/2023-03-09/kentucky-house-oks-bill-to-regulate-hemp-derived-delta-8-thc [https://perma.cc/V35M-7BL5]……………………………………………11

*National Beer Sales & Production Data,* Brewers Association, https://www.brewersassociation.org/statistics-and-data/national-beer-stats/ [https://perma.cc/U6YQ-DM8A ] (visited Jan. 23, 2024)……………6

*Schedules of Controlled Substances: Temporary Placement of MDMB-4en-PINACA, 4F-MDMB-BUTICA, ADB-4en-PINACA, CUMYL-PEGACLONE, 5F-EDMB-PICA, and MMB-FUBICA into Schedule I*, 88 F.R. 86040 (Dec. 12, 2023), https://www.federalregister.gov/documents/2023/12/12/2023-27243/schedules-of-controlled-substances-temporary-placement-of-mdmb-4en-pinaca-4f-mdmb-butica [https://perma.cc/465E-5UXV] ........9

*Tennessee General Assembly Passes Sweeping Regulations for Hemp-Derived Cannabinoids*, FOX13 Memphis (May 2, 2023), https://www.fox13memphis.com/news/tennessee-general-assembly-passes-sweeping-regulations-for-hemp-derived-cannabinoids/article_131c943a-e8e8-11ed-bd84-5765ed399eea.html [https://perma.cc/EC83-7EM5]……………………………………………11

*Toward Normalized Cannabinoid Regulation*, American Trade Ass'n for Cannabis & Hemp, p. 4 (June 2023), https://atach.org/wp-content/uploads/2023/06/ATACH-Paper-Toward-Normalized-Cannabinoid-Regulationd.pdf [https://perma.cc/E4SA-WTB4]…………..10

Appellate Case: 23-3237      Page: 5      Date Filed: 02/06/2024 Entry ID: 5360551

## Statement of Identity and Interest of *Amicus Curiae*

The Hemp Industries Association ("HIA") is the longest standing non-profit trade association advocating for farmers and small business owners dedicated to the redevelopment of the American hemp supply chain—whether grown for grain, fiber or cannabinoid production. Since 1994, HIA has represented those who have invested their time and treasure in producing hemp and manufacturing hemp products by advocating for responsible regulations surrounding the production of hemp and promoting best practices in the manufacturing of hemp derived cannabinoid products like testing, labeling, packaging and appropriate age restrictions.

HIA supports the freedom of Americans to make a living by growing, processing, manufacturing and selling hemp and hemp derived products regardless of the end use of the crop as intended in the 2014 and 2018 Farm Bills. HIA has long supported the adoption of industry standards designed to increase quality control standards through uniform labeling, testing, and packaging and, where appropriate, age restrictions of hemp derived products. HIA's goal is to renormalize hemp as an agricultural product with quality control standards comparable to

1

any other agricultural goods, whether it be animal feed, foods or dietary supplements for human consumption or textiles in the clothing and construction industries.

To this end, HIA strives to educate stakeholders on the importance of ensuring laws and regulations position American farmers to compete in a national and international marketplace, increase consumer protections and quality-control standards for consumable hemp products without sacrificing broad consumer access, and any other actions needed to make hemp production for grain, fiber and cannabinoids a viable market for responsible farmers and other entrepreneurs. HIA members must commit to a code of ethics consistent with these goals.

HIA has an interest in this case because it supports the normalization of hemp as an agricultural product, whether it be for grain, fiber or cannabinoids, in which people can invest their time and treasure with confidence. Popular hemp-derived cannabinoid products like Delta-8 THC have become a crucial product for the economic viability of the HIA's members and the overarching national marketplace. We are

Appellate Case: 23-3237    Page: 7    Date Filed: 02/06/2024 Entry ID: 5360551

excited to see other yet to be discovered and rediscovered opportunities hemp provides American farmers and entrepreneurs.[1]

---

[1] No party's counsel authored this brief in whole or in part; no party or party's counsel contributed money that was intended to fund preparing or submitting this brief; and no other person contributed money that was intended to fund preparing or submitting this brief other than amici and their counsel. Fed. R. App. P. 29(a)(4)(E).

Appellate Case: 23-3237    Page: 8    Date Filed: 02/06/2024 Entry ID: 5360551

## ARGUMENT

## 1. A plain reading of the 2018 Farm Bill compels the conclusion that all hemp-derived cannabinoids under .3% delta 9 THC are legal products.

Congress first exempted hemp from the Controlled Substances Act ("CSA") under certain circumstances by enacting the Agriculture Improvement Act of 2014 ("2014 Farm Bill"). Congress then permanently removed both "hemp" and "tetrahydrocannabinols in hemp[2]" from the CSA under the Agriculture Improvement Act of 2018 ("2018 Farm Bill") in order to encourage and provide more confidence to American farmers to redevelop the domestic supply chain of hemp and hemp products.

Furthermore, Congress deliberately expanded the definition of "hemp" under the 2018 Farm Bill. The expanded definition specifically includes the hemp plant and "*any part of that plant, including the seeds thereof, and all derivatives, extracts, cannabinoids, isomers, acids, salts and salts of isomer, whether growing or not, with a delta-9 THC concentration of not more than 0.3 percent on a dry weight basis*"[3] (*emphasis added*). Congress also removed the qualifier "industrial" from

---

[2] 21 U.S.C. § 802(16)(B): "*The term "marihuana" does not include— (i) hemp, as defined in section 1639o of title 7.*"
[3] 7 U.S.C. § 1639o(1).

Appellate Case: 23-3237     Page: 9     Date Filed: 02/06/2024 Entry ID: 5360551

the definition of hemp as well as unambiguously made the United States Department of Agriculture the primary federal regulator of hemp production leaving no claim of jurisdiction to the Drug Enforcement Agency.

When Congress deliberately expanded the definition of hemp, a plain reading makes it clear to the hemp industry that the sole legal metric distinguishing hemp, an agricultural commodity, and marijuana, a Schedule I Controlled Substance, is the concentration of delta-9 THC on a dry weight basis of the plant or product. The concentrations of other hemp-derived cannabinoids or isomers in harvested hemp and hemp products are irrelevant with respect to its legal status. If the delta-9 THC concentration in harvested hemp or a hemp product does not exceed 0.3% delta-9 THC by dry weight, then it is not a controlled substance under federal law. If harvested hemp or hemp product is above .3% delta-9 THC on a dry weight basis, it is marijuana. While this sole legal metric is completely arbitrary, this arbitrary metric has acted as a North Star to American farmers and other entrepreneurs for the last six (6) plus years as they navigate the volatile fields of rebuilding an entire industry from the ground up.

Appellate Case: 23-3237    Page: 10    Date Filed: 02/06/2024 Entry ID: 5360551

Despite the boom and busts found in every developing marketplace, a 2023 national report from Whitley Economics estimates the total demand for hemp-derived cannabinoids was valued in excess of $28 billion and supports the employment of 328,000 workers, who earn $13 billion in wages[4]. To help put these numbers in perspective, "…hemp-derived cannabinoid sales nationally were greater than total legal sales of medical and adult-use cannabis in 2022[5]" and the national total for craft beer sales was $28.4 billion in 2022[6], the same amount as hemp-derived products. Clearly, the vast majority of American farmers and other small business owners around the country are responsibly meeting consumer demand for hemp products whether it be through physical retail or online sales shipped directly to consumer mailboxes.

## 2.    Hemp-derived products are manufactured by properly licensed individuals and should not be conflated or confused with illegal compounds like "spice".

---

[4] Beau R. Whitney and Beau Wilberding, *2023 National Cannabinoid Report*, Whitney Economics at 4 (October 2023), https://whitneyeconomics.com/report/2023-us-national-cannabinoid-report. For ease of reference, a copy of the report may be accessed at https://perma.cc/32GT-STN2.
[5] *Id.*, at 12.
[6] *National Beer Sales & Production Data,* Brewers Association, https://www.brewersassociation.org/statistics-and-data/national-beer-stats/ [https://perma.cc/U6YQ-DM8A ] (visited Jan. 23, 2024).

There are many of forms of the tetrahydrocannabinol (THC) molecule found in the hemp plant and its extracts and derivatives. Some of these forms of THCs are called isomers. An isomer is one of two or more compounds that contain the same number of atoms of the same elements but differ in structural arrangement and properties.[7] Popular hemp-derived isomers on the market today include delta-8 THC and delta-10 THC, which have gained more attention in the media and marketplace due to the popularity of such products with consumers seeking functional relief. Indeed, a local fire department in Indiana recently updated their drug testing policies to allow its employees to consume hemp-derived cannabinoid products, including delta-8 THC, as means to increase choice on the wellness marketplace[8].

Unfortunately, market and misinformed forces continue to conflate legal hemp-derived cannabinoids products like delta-8 THC products

---

[7] *Definition of ISOMER,* Merriam-Webster, https://www.merriam-webster.com/dictionary/isomer [https://perma.cc/S4T7-WW3D] (accessed Jan. 23, 2024).

[8] Sierra Hignite, *Fire Department Sparks Conversations after Allowing Staff to Use CBD Products Including Delta-8*, FOX59 News (July 12, 2023), https://fox59.com/indiana-news/fire-department-sparks-conversations-after-allowing-staff-to-use-cbd-products-including-delta-8/ [https://perma.cc/9WPS-YHT6].

Appellate Case: 23-3237     Page: 12     Date Filed: 02/06/2024 Entry ID: 5360551

with illegal compounds like JWH-018 ("Spice"). New terms are sometimes invented to describe hemp-derived cannabinoids such as American Trade Association for Cannabis and Hemp's (ATACH) newly coined "hemp synthesized-intoxicant" and attempt to call into question the legal status of certain hemp-derived cannabinoids by using the new invented terminology. However, in August of 2020, the Drug Enforcement Agency's ("DEA") Interim Final Rule ("IFR") implementing the 2018 Farm Bill expressly states that hemp and hemp products are not controlled substances:

*"In order to meet the definition of "hemp", and thus qualify for the exemption from [S]chedule I, the derivative must not exceed the 0.3% <u>delta-9 THC</u> limit. The definition of "marihuana" continues to state that "all parts of the plant Cannabis sativa L." and "every compound manufacture, salt, derivative, mixture, or preparation of such plant," are [S]chedule I controlled substances unless they meet the definition of "hemp" (by falling below the 0.3% <u>delta-9 THC</u> limit on a dry weight basis)..." (<u>Emphasis</u> added).*[9]

---

[9] *Implementation of the Agriculture Improvement Act of 2018*, 85 F.R. 51639, 51641 (Aug. 21, 2020), https://www.federalregister.gov/documents/2020/08/21/2020-

Appellate Case: 23-3237     Page: 13     Date Filed: 02/06/2024 Entry ID: 5360551

Furthermore, on December 12, 2023, and relevant to ATACH's contention that hemp-derived products or, "HSIs," are a threat to public health and safety, the DEA published a notice to temporarily schedule six synthetic compounds:

> "*The Administrator of the Drug Enforcement Administration is issuing a temporary order to schedule six synthetic cannabinoids and their optical and geometric isomers, salts, and salts of isomers, whenever the existence of such isomers and salts is possible, in schedule I under the Controlled Substances Act. This action is based on a finding by the Administrator that the placement of these six substances in schedule I is necessary to avoid imminent hazard to public safety. As a result of this order, the regulatory controls and administrative, civil, and criminal sanctions applicable to schedule I controlled substances on persons who handle (manufacture, distribute, reverse distribute, import, export, engage in research, conduct instructional activities or chemical analysis with, or possess) or propose to handle these six controlled substances.*" [10]

---

17356/implementation-of-the-agriculture-improvement-act-of-2018 [https://perma.cc/JC52-AF5V].

[10] *Schedules of Controlled Substances: Temporary Placement of MDMB-4en-PINACA, 4F-MDMB-BUTICA, ADB-4en-PINACA, CUMYL-PEGACLONE, 5F-EDMB-PICA, and MMB-FUBICA into Schedule I*, 88 F.R. 86040 (Dec. 12, 2023), https://www.federalregister.gov/documents/2023/12/12/2023-27243/schedules-of-controlled-substances-temporary-placement-of-mdmb-4en-pinaca-4f-mdmb-butica [https://perma.cc/465E-5UXV].

Appellate Case: 23-3237     Page: 14     Date Filed: 02/06/2024 Entry ID: 5360551

None of the six compounds listed are hemp-derived cannabinoids. This recent action by the DEA was an ideal time to address any imminent hazard to public safety presented by hemp-derived cannabinoids. Instead, the DEA's IFR affirms the plain reading of the 2018 Farm Bill and demonstrates the DEA has no jurisdiction over hemp and hemp-derived products. The only legal distinction between hemp, and a controlled substance like marijuana, is by the delta-9 THC concentration on a dry weight basis of the plant or product in question.

In its whitepaper, ATACH, with no hemp farmers or hemp manufacturers on its board of directors, decries hemp-derived cannabinoid products because they fall outside the purview of state-legal marijuana markets:

> We highlight four areas of concern regarding the proliferation of hemp-synthesized intoxicating products: lack of age limits, residual chemicals, consumer labels, and testing, which are all features of the regulated state-legal cannabis markets. We suggest that lawmakers should adopt a regulatory framework that encourages participation in the regulated market for producers, establishes critical best practices, testing standards, and labeling requirements, and educates consumers on the risks of regulated products."[11]

---

[11] *Toward Normalized Cannabinoid Regulation*, American Trade Ass'n for Cannabis & Hemp, p. 4 (June 2023), https://atach.org/wp-content/uploads/2023/06/ATACH-Paper-Toward-Normalized-Cannabinoid-Regulationd.pdf [https://perma.cc/E4SA-WTB4].

Appellate Case: 23-3237    Page: 15    Date Filed: 02/06/2024 Entry ID: 5360551

Despite the unfounded claim that hemp-derived cannabinoids products are not regulated, individual states continue to pass laws and regulations to provide more guardrails around the responsible manufacturing, sale and consumption of these popular products. States like Kentucky[12], Tennessee[13] and Florida[14] all recently passed laws that increase consumer safety, public safety and quality control standards for the marketplace. In general, these efforts put appropriate age restrictions on certain popular products, prohibit look-a-like packaging that may confuse consumers and increase testing requirements to ensure consumers are getting a product that matches the label. Furthermore, a

---

[12] *Kentucky House OKs Bill to Regulate Hemp-Derived Delta-8 THC*, US News & World Report (Mar. 9, 2023), https://www.usnews.com/news/best-states/kentucky/articles/2023-03-09/kentucky-house-oks-bill-to-regulate-hemp-derived-delta-8-thc [https://perma.cc/V35M-7BL5].

[13] *Tennessee General Assembly Passes Sweeping Regulations for Hemp-Derived Cannabinoids*, FOX13 Memphis (May 2, 2023), https://www.fox13memphis.com/news/tennessee-general-assembly-passes-sweeping-regulations-for-hemp-derived-cannabinoids/article_131c943a-e8e8-11ed-bd84-5765ed399eea.html [https://perma.cc/EC83-7EM5].

[14] Adrian Andrews, *Florida Lawmakers Pass Hemp Regulation Bill without THC Caps*, WUSF (May 3, 2023), https://www.wusf.org/politics-issues/2023-05-03/fl-lawmakers-pass-hemp-regulation-bill-without-thc-caps-heads-to-desantis-desk [https://perma.cc/8ENV-JWU2].

Appellate Case: 23-3237     Page: 16     Date Filed: 02/06/2024 Entry ID: 5360551

license from either USDA or a relevant state regulator is required to grow and manufacture hemp in every state of the country.

Individual state efforts like these demonstrate that these products are regulated, just not through state-legal marijuana programs as preferred by ATACH. As history has proven, genuine concerns with existing marketplaces are much more efficiently addressed and mitigated through responsible regulations rather than prohibition or unnecessarily restricting adult access to products.

### 3.    The term "production" is a term of art with a clear definition in statute that compliments the protection of hemp and hemp products traveling through interstate commerce.

The term "production" appears in separate sections of the 2018 Farm Bill and is a term of art. In the first statutory provision, 7 U.S.C. § 1639p(a)(2)(A)(ii), Congress sets forth the criteria that States and Indian tribes must comply with in order to "*have primary regulatory authority over the production of hemp*" within their jurisdictions pursuant to 7 U.S.C. § 1639p(a)(1)(A)(ii) (emphasis supplied). The second statutory provision, 7 U.S.C. § 1639q(a)(2)(B), is similar in that it sets forth the criteria that the USDA shall use to "monitor and regulate hemp production" in states that do not have an approved hemp plan and thus

do not have primary regulatory authority over hemp production within their jurisdictions.

The key word in the above provisions is "production." Under 7 CFR § 990.1, a plain reading of "produce" means "[t]o grow hemp plants for market, or for cultivation for market, in the United States." Additionally, 7 CFR § 718.2 defines a "producer" as "an owner, operator, landlord, tenant, or sharecropper, who shares in the risk of producing a crop and who is entitled to share in the crop available for marketing, from the farm, or would have shared had the crop been produced. A producer includes a grower of hybrid seed." Clearly, to "produce" hemp means to grow hemp, and a state may restrict the ability to grow hemp more stringently under federal law with provisions directly related to growing hemp like requiring certified seed and setback requirements.

An interpretation that allows states to pick and choose what is legal coming off the broad definition of hemp renders the interstate protection of hemp and hemp products moot. A plain reading of the relevant statutes leaves no doubt on Congressional intent:

"No State or Indian Tribe shall prohibit the transportation or shipment of hemp or hemp products produced in accordance with subtitle G of the Agricultural Marketing Act of 1946 (AMA) (as added by section

13

10113) through the State or the territory of the Indian Tribe, as applicable."[15]

If states are permitted to pick and choose what is legal coming from the hemp plant, farmers and businesses will be forced to avoid and travel around certain states, which is the exact scenario the interstate protection of hemp and hemp products seeks to avoid. It is clear Congress understood some states may drag their feet regarding hemp and hemp products and added protections to ensure that individual states could not interfere with the redevelopment of a domestic hemp production program.

Finally, a plain reading of the 2018 Farm Bill unambiguously states that, "[a] hemp producer that negligently violates a State or Tribal plan under subparagraph (A) shall not as a result of that violation be subject to any criminal enforcement action by the Federal Government or any State government, Tribal government, or local government."[16] This provision would not be needed if Congress intended individual states to be able to manipulate the definition of hemp. Instead, Congress

---

[15] 7 U.S.C. § 1639o, note *b*.

[16] 7 U.S.C. § 1639p(e)(2)(C).

deliberately and proactively provided a black letter of law safe harbor for American hemp farmers from states that may drag their feet on redeveloping a domestic supply chain of hemp and hemp products.

## CONCLUSION

For the foregoing reasons, the district court's decision should be affirmed.

/s/

Lee Curry, Attorney-at-Law
3548 Village Walk Drive
Bryant, AR 72022
(870) 510-1433
Lee@LeeCurryLawFirm.com

Attorney for *Amicus Curiae*

15

## CERTIFICATE OF SERVICE

I, hereby certify that on this 24th day of January, 2024, I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/
Lee Curry, Attorney-at-Law

Appellate Case: 23-3237    Page: 21    Date Filed: 02/06/2024 Entry ID: 5360551

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of <u>Fed. R. App. P. 32(a)(7)(B)</u> and <u>Fed. R. App. P. 29(a)(5)</u> as the total word count for pages 1 through 15 is 2,533 words.

This brief complies with the typeface requirements of <u>Fed. R. App. P. 32(a)(5)</u> and the type style requirements of <u>Fed. R. App. P. 32</u> (a)(6) as it is prepared using Microsoft Word **f**or Microsoft 365 MSO Version 2312, including a proportionally spaced font with Century Schoolbook, size 14 font.

The brief has been scanned for viruses and is virus free.

/s/
_____
Lee Curry, Attorney-at-Law

a